MARK J. HORNER vs. BOSTON EDISON COMPANY.

No. 97-P-0102.

Plymouth. March 19, 1998. - June 30, 1998.

Present: BROWN, GREENBERG, & SPINA, JJ.

*Appeals Court,* Summary disposition. *Workers' Compensation Act,* Action against third person. *Contract,* Release from liability, Consideration. *Labor,* Collective bargaining.

This court again declined to consider as precedent an unpublished opinion decided pursuant to Rule 1:28 of the Rules of the Appeals Court by a three-judge panel of the Appeals Court. [140-141]

An employee's release of rights to make claims or bring suit against his employer's "client or customer" for damages based on injuries covered by the workers' compensation statute, G. L. c. 152, was not void as against public policy [141-142], unenforceable as unconscionable [143], or otherwise unenforceable for want of consideration [143]; moreover, the release was not superseded by any provision of a subsequently negotiated collective bargaining agreement which did not address the matter [143-145].

CIVIL ACTION commenced in the Superior Court Department on August 12, 1991.

A renewed motion for summary judgment was heard by *Richard F. Connon,* J., and an interlocutory appeal to the full bench of the Appeals Court was allowed by *Smith,* J.

*Philip E. Murray, Jr. (Mark A. Newcity* with him) for the defendant.

*J. Michael Conley* for the plaintiff.

GREENBERG, J. On April 22, 1989, while making a security check at the defendant's (Edison's) Pilgrim Nuclear Plant, the plaintiff, Mark J. Horner, slipped and fell on a stairway with a missing tread. That mishap caused him serious injuries, which disabled him from working. At the time of the accident, Horner was an employee of Wackenhut Corporation (Wackenhut), which had a contract with Edison to provide security services at the plant. After filing a claim under G. L. c. 152 for workers'

compensation benefits, he began receiving weekly payments from Wackenhut's workers' compensation insurer. The workers' compensation case was eventually the subject of a lump sum settlement agreement approved by the Department of Industrial Accidents on May 1, 1991. The agreement submitted to the board permits Horner to bring a third-party action pursuant to G. L. c. 152, § 15.

In 1991, Horner sued Edison for negligence in causing the injuries suffered in the 1989 accident. At issue here is the validity of the release signed by Horner in July of 1988, as part of his original employment application with Wackenhut. The release, if valid, bars any suit by him against Edison for his injuries. Edison's motion for summary judgment has been denied three times by different Superior Court judges. The last denial of Edison's renewed motion for summary judgment was made after our unpublished decision issued in *McKenzie* v. *Boston Edison Co.*, 40 Mass. App. Ct. 1112 (1996), in which a panel of this court held that the same release at issue here was valid, and we affirmed a summary judgment for Edison on that basis.[1] The motion judge chose not to follow the reasoning in the *McKenzie* case. As a result, Edison brought an interlocutory appeal to a single justice of this court pursuant to G. L. c. 231, § 118, first par. The single justice denied relief but gave Edison permission to appeal to a full panel. See *Swift* v. *American Mut. Ins. Co.*, 399 Mass. 373, 375 n.5 (1987).

There is a threshold issue. Edison argues that Horner's claims in this case are controlled by our unpublished decision in the *McKenzie* case. For the very reason that the decision was unpublished, Edison's argument is without merit. We have never suggested that summary decisions of this court issued pursuant to rule 1:28, as amended, 10 Mass. App. Ct. 942 (1980), may be relied upon or cited as authority in other cases. In fact, we reached the opposite conclusion in at least two other cases. See *Lyons* v. *Labor Relations Commn.*, 19 Mass. App. Ct. 562, 566 n.7 (1985), *S.C.*, 397 Mass. 498 (1986); *Wolbach* v. *Beckett*, 20 Mass. App. Ct. 302, 306 n.5 (1985). While we left open the possibility that a summary decision could be cited as precedent in a "related" case, we have had no occasion to do so. See *Pur-*

---

[1]Rule 1:28 of the Rules of the Appeals Court enables the Appeals Court not to publish both civil and criminal decisions that present no substantial question of law or where it appears that no clear error of law has been committed which injuriously affects substantial rights of an appellant.

*vis* v. *Commissioner of Correction,* 29 Mass. App. Ct. 190, 192 n.5 (1990), where we refused to rely upon a rule 1:28 decision cited by one of the parties "[w]ithout assessing any similarities and differences between that case and the present one."

Edison's argument on this point is that Horner's case and the decision in *McKenzie* are "related" because both deal with the same release in an identical context. There is no question that the substantive issues are related and that for informational purposes the *McKenzie* case might have some value. However, as we said in *Lyons,* unpublished decisions involving other parties are not to be relied upon. 19 Mass. App. Ct. at 566. The most important factor is that summary decisions, although open to public examination, are made only by the panel of justices who decide the case. If a decision is to be a summary disposition order, it is not circulated to the other members of this court and reflects only the views of that particular three-judge panel. If a decision is to be published in the official reports of the court, it is circulated to all other justices who are free to make any comments or suggestions concerning the draft decision. That remains a crucial distinction because a published opinion represents the view of the entire court. See *Sciaba Constr. Corp. v. Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993).[2]

With that preliminary question answered, we turn to Horner's various arguments that the release does not bar his third-party action. The question turns upon an agreement signed by Horner as part of his application for employment with Wackenhut in 1988. He signed a section entitled "Understanding and Agreements," the pertinent part of which is set forth in the margin of our opinion.[3]

Of several arguments made by Horner, the principal one

---

[2]Edison's other argument is that, pursuant to the principle of issue preclusion (collateral estoppel), the question of the validity of the release, decided in the *McKenzie* case, cannot be litigated anew in this case. This argument is waived, as Edison failed to raise it below. See, e.g., *Bendetson* v. *Building Inspector of Revere,* 36 Mass. App. Ct. 615, 620 n.9 (1994), citing *Anthony's Pier Four, Inc.* v. *HBC Assocs.,* 411 Mass. 451, 471 (1991) (where party did not plead claim preclusion, and issue was not raised or considered in the trial court, the defense could not be raised for the first time on appeal).

[3]"In consideration of any offer of employment by Wackenhut, I hereby acknowledge, understand and agree that the following will constitute terms and conditions of any such employment . . . . [I]n recognition of the fact that any work related injuries which might be sustained by me are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the customers or clients of Wack-

adopted by the motion judge is that the release violates public policy because G. L. c. 152, § 15, specifically grants an employee the right to proceed to enforce liability against a third party whose negligence has caused the employee's injury.[4] Although Horner's brief does not elaborate on the point, the essence of his position is that, if employers can compel employees, in exchange for hiring them, to forgo any redress for injuries caused by the negligence of the employer's customers, those employers will have an advantage in the marketplace at the employees' expense.

The theory has surface appeal, but once examined there are several flaws. In a variety of ways, the agreement is not inconsistent with the principal consideration that forms the basis of our workers' compensation laws. The release does not require Horner to strip himself of compensation benefits for his injury, and allocation of risk by means of a release is generally not against public policy. See *Gonsalves* v. *Commonwealth*, 27 Mass. App. Ct. 606, 608 (1989). Further, the agreement does not cover all contingent liability. In exchange for employment, it extinguishes only the employee's right to recover additional amounts as a result of a work-related injury for which the employee has already received workers' compensation benefits. As stated in *Edgin* v. *Entergy Operations, Inc.*, 331 Ark. 162, 168 (1998), in which on indistinguishable facts the Arkansas Supreme Court upheld the identical release, "the employee is merely agreeing to waive an additional remedy against a client of Wackenhut in exchange for employment." In this respect, we cannot say that the agreement violates public policy by discouraging the employer or its clients from exercising care. Viewed as a whole, the release is not extracted by the employer as a shield against its own liability but rather as protection for its customers for those risks assumed by its employees who, in turn, are covered by workers' compensation insurance.

---

enhut based on the same injury or injuries, and to the extent permitted by law, *I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE* to make claims or bring suit against any client or customer of Wackenhut for damages based upon injuries which are covered under such Workers' Compensation statutes" (emphasis in original).

[4] We have omitted discussion in the text whether the agreement is enforceable by Edison under the principle of law that a contract made for the benefit of a third party is actionable by such third party. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 195 (1982); *Spinner* v. *Nutt*, 417 Mass. 549, 555 (1994). The argument was not advanced in the Superior Court, nor is it raised by Edison on appeal.

Enforcement of the release is not unconscionable. Horner does not claim that the release was concealed from him, that he signed it under duress, or that its contents were misrepresented. *Cormier* v. *Central Mass. Chapter of the Natl. Safety Council,* 416 Mass. 286, 288-289 (1993). The release specifically mentions that the employee is releasing any claims against customers of the employer that might arise under the workers' compensation law. Nor does Horner argue that he could not have worked for any other employer if he did not sign the release. See *Minassian* v. *Ogden Suffolk Downs, Inc.,* 400 Mass. 490, 493 (1987).

Horner also makes an unfocused argument that the release is invalid because of some alleged ambiguity. Without citation to any authority, the argument is reduced to a naked claim that "the language of the [release] itself, in addition to being disguised as an employment application," fails as an agreement for lack of consideration. We do not agree. There is no mistaking the document for what it purports to be. The application states that the release of rights is made "in consideration of any offer of employment by Wackenhut." And there is no question that Horner became employed by Wackenhut after he filled out the employment application. Secondly, Horner was an at-will employee, who could leave or be discharged from Wackenhut's employ at any time. Thus, even if we assume that Wackenhut agreed to employ him or that he began working for Wackenhut prior to signing the employment application, his continued employment, as of July 27, 1988, was dependent on his filling out and signing the application. This constitutes sufficient consideration for the release of claims. *Coveney* v. *President & Trustees of the College of the Holy Cross,* 388 Mass. 16, 21-23 (1983).

Horner urges that the release was voidable because it was not a subject of collective bargaining. The short answer to this is that nothing in the record supports it. The release was signed on July 20, 1988, about one month before his union negotiated a collective bargaining agreement with Wackenhut.[5]

Horner also argues that, because the union was the exclusive representative of its members for purposes of collective bargain-

---

[5]Horner was a member of the International Union of United Plant Guard Workers of America (UPGWA), which entered into a collective bargaining agreement with Wackenhut dated August 18, 1988. The agreement recognized the union as the exclusive bargaining representative for purpose of collective

ing, he was stripped of authority to act independently of his union in signing the release with Wackenhut, and Wackenhut could not establish an enforceable agreement with him without first having notified the union. As a corollary, he argues that, even if the side contract was authorized, the collective bargaining agreement supplanted the release portion when the agreement went into effect on August 18, 1988. It has not escaped our notice that Wackenhut may have used its one-month window of opportunity before signing a union contract to take advantage of its employees by bringing them in one at a time to sign a document styled as an "Application for Employment," which actually included the liability release at issue here. Unfortunately for Horner and the other employees, the union failed to negotiate a contract that voided the release. This disposes of Horner's preemption claim because the contract does not address the release issue. There is no question that the union members and Wackenhut could have negotiated independently of the union on this point but elected not to do so. Even if they did, the union contract fails to state that it "supersede[s] and void[s] all inconsistent provisions of any prior contract." Contrast *Poskus v. Braemoor Nursing Home, Inc.*, 6 Mass. App. Ct. 896, 897 (1978).[6] By its actual terms, the collective bargaining agreement is limited to the subjects contained within it; therefore, Horner cannot claim that the subject of the release was addressed explicitly or implicitly by the terms of the agreement, or that Wackenhut was required to bargain collectively over the subject of the release.

Likewise, under the terms of the agreement, Horner cannot claim that he lacked the authority to execute the release because of his status as a union member. To be sure, when employees become union members, they surrender the ability to bargain directly with their employer on those matters governed by a collective bargaining agreement or on subjects where the employer is obligated by law to bargain collectively with the employee's union. See *School Comm. of Newton v. Labor Relations Commn.*, 388 Mass. 557, 562 (1983). Not every matter

bargaining for pay, wages, hours of employment, and other conditions of employment for all security officers and watch persons.

[6]Horner also relies upon *Canney v. New England Tel. & Tel. Co.*, 353 Mass. 158, 165 (1967), which holds that a prior oral contract can be superseded and merged into a subsequent written contract. Neither of these decisions supports Horner's contention that the release given in favor of Edison was superseded by the agreement between the UPGWA and Wackenhut.

that may affect a union member's employment, however, must be submitted to collective bargaining. An employee may contract directly with the employer on matters not addressed by a collective bargaining agreement or on which the employer is not obligated to bargain for collectively with the union. See *Quesnel* v. *Prudential Ins. Co.*, 66 F.3d 8, 11-12 (1st Cir. 1995).

We have not overlooked that aspect of G. L. c. 152, § 15, that gives the workers' compensation insurer the right to recover all or any part of compensation payments made to the worker for injuries caused by a third party. The question whether the release might bar the workers' compensation insurer from pursuing or receiving these benefits seems foreclosed by the language of § 15, as appearing in St. 1991, c. 398, § 39, which states that "[t]he sum recovered shall be for the benefit of the insurer . . . ." See *Pinto* v. *Aberthaw Constr. Co.*, 418 Mass. 494, 500 (1994). The issue is not presented in this appeal, however, and must await another day.

The order appealed from denying Edison's motion for summary judgment is vacated. An order shall enter allowing the motion, and judgment shall enter for Edison.

*So ordered.*