Fecteau, J.
This matter is before the court on the Joint Motion to Dismiss or Alternatively for Summary Judgment of Defendants Massachusetts Turnpike Authority (“MTA”), F.L. Roberts & Co., Inc. (“F.L. Roberts”), Exxon Corporation (“Exxon”) and Mobil Oil Corporation (“Mobil”). Plaintiffs, Richard P. Kempinski and Renate K. Kempinski, commenced this action against the Defendants alleging that petroleum migrated from the gasoline service area known as the 6W Service Area and contaminated their only water supply. They are seeking recovery for personal injury, emotional distress, and property damage as a result of the petroleum contamination. As both the plaintiffs and defendants have presented to the court matters outside the pleadings, the motion will be treated as one for summary judgment. For the following reasons, the defendants’ motion is ALLOWED.
BACKGROUND
The MTA owns a gasoline service station on the westbound side of the Massachusetts Turnpike in Charlton, Massachusetts, the 6W Service Area. At different times since 1957, Defendants F.L. Roberts & Co., Exxon and Mobil have leased, and/or operated and/or supplied motor fuel to the gasoline service station at the 6W Service Area. Specifically, from 1957 to 1982, Exxon leased the 6W Service Area. From approximately 1982 to 1990, F.L. Roberts leased the 6W Service Area and Exxon supplied *436 petroleum products to F.L. Roberts for sale. From approximately 1990 to present, Mobil has leased the 6W Service Area.
Plaintiffs own property at 17 Timber Valley Road, Charlton. Plaintiffs purchased the property on or about December 20, 1991. Plaintiffs’ property is located more than one-quarter mile from the 6W Service Area.
In 1990, the MTA engaged Rizzo Associates, Inc. (“Rizzo”), an environmental engineering consulting firm, to conduct an environmental assessment of the 6W Service Area to attempt to identify and remediate any past releases of oil and/or hazardous material to the soil and groundwater. In connection therewith, Rizzo identified contamination in the soil and groundwater at the 6W Service Area. As a precautionary measure, the Massachusetts Department of Environmental Protection, in June 1990, directed the MTA to obtain samples of well water from residential properties located within a radius of slightly more than one-half mile of the 6W Service Area.
In September and October 1990, Rizzo obtained samples from over 100 water wells located on properties near the 6W Service Area, including the water well located at plaintiffs’ property. In November and December of 1990, samples were again collected from certain water wells previously tested, including plaintiffs’ property. The water samples obtained from plaintiffs’ former property were taken to a laboratory and analyzed for chemicals and compounds associated with gasoline, such as benzene, toluene and methyl tert butyl ether (“MTBE”), among various other chemicals and compounds. None of the laboratory analyses of those samples detected any kind of contaminant related to any type of petroleum product or otherwise attributable to any release at the 6W Service Area.
Thereafter, in December 1991, plaintiffs purchased the property. Additional water samples have been collected from plaintiffs’ property from 1993 up through April 1997. The laboratory analyses of these samples did not detect any kind of contaminant.
Petroleum related compounds have since been detected in the water supply wells of the following properties within 750 feet of the Kempinski property:
19-C-4 (MTA); 19-C-5 (Burlingame); 19-C-9; 19-C-11.13 (Curran); 19-C-11.14 (Splane); 19-C-11.15 (Carbonneau); 19-C-l 1.18 (McCarthy/Robbie); 19-C-11.24 (Patrick Scavone); 19-C-l 1.26 (Seaman); 19-C-l 1.27 (Charles Scavone); and 19-C-l 1.28 (Mulcahy).
In 1996, plaintiffs’ property was connected to a municipal water supply line at no cost to plaintiffs. Plaintiffs, however, have chosen not to use the municipal water service and continue to use the water supply well located at plaintiffs’ property.
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party has established the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts . . .” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, the nonmoving party must respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
The dispute between the parties to this case is whether the plaintiffs have a reasonable expectation of proving actual contamination to their property.
A. Count I: M.G.L.c. 21E
“General Laws c. 2IE, §5(a)(iii) [a provision of the Massachusetts Oil and Hazardous Material Release Prevention Act], provides a properly owner with a strict liability claim against certain classes of persons for ‘damage to his real or personal property incurred or suffered as a result of ¡a] release or threat of release’ of hazardous materials.” Guaranty-First Trust Co. v. Textron, 416 Mass. 332, 334 (1993). The Appeals Court decided a similar case under Rule 1:28.[2]
In Scavone v. Massachusetts Turnpike Authority and others[3] (and three consolidated cases),[4] No. 95-P-1927 (App.Ct. December 1997), the Appeals Court affirmed the dismissal of three similar actions because the plaintiffs could not demonstrate the presence of actual contamination of their property or water supply. In doing so, the court stated: “[a]bsent proof of actual contamination of their property or water supply from the release of hazardous materials and the resultant damage to their property or the incurring of response costs as a result of the threat of release of hazardous materials, the plaintiffs’ common-law *437 claims and statutory claim under G.L. 21E, §5, are barred.” Id. at 3, citing Gareth v. Boston Edison Co., 415 Mass. 303, 305-08 (1993), and Guaranty-First Trust Co. v. Textron, Inc., 416 Mass. 332, 335-38 (1993).
In those three cases, the Appeals Court concluded that the verified materials presented to the motion judges were insufficient to overcome the defendants’ allegations that those plaintiffs could not show actual contamination of their property or water supply or any damage to their property to support their claims as a matter of law.
In the present action, there is no evidence before the court of any release on plaintiffs’ property. The expert affidavit acknowledges the absence of any analytic data confirming the presence of contamination. Rather, the expert testifies that “the Kempinski property, 17 Timber Valley Drive, Charlton, Massachusetts, more likely than not, contains petroleum contaminants which have migrated and continue to migrate to the present day from the [6W Service Area]” (emphasis added). The expert, Richard G. Kowalski of Lincoln Environmental, Inc., theorizes that because contamination exists in the surrounding area, contamination must therefore exist on the plaintiffs property.[5] This Court does not find the expert testimony persuasive as it fails to offer anything other than conclusory opinions. Therefore, the expert affidavit, standing alone, does not demonstrate a material issue of fact.
Therefore, no evidence exists of actual contamination to plaintiffs’ water supply. Because plaintiffs have no evidence of any contamination in, on, or at plaintiffs’ property, plaintiffs cannot maintain property damage claims under Chapter 21E. Therefore, the defendants are entitled to judgment as a matter of law on Count I.
B. Counts II-V: Strict Liability, Negligence, Private Nuisance, and Trespass
In order to recover in strict liability for an ultra-hazardous or abnormally dangerous activity, the plaintiffs must demonstrate injury or harm resulting from the activity. Clark-Aiken Co. v. Cromwell-Wright Co., Inc., 367 Mass. 70, 89 (1975). Evidence of personal injury or property damage is also required for a negligence claim. Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 742 (1978). Moreover, there is no liability for private nuisance without injury to property of another. Asiala v. City of Fitchburg, 24 Mass.App. Ct. 13, 16-17 (1987). Similarly, “A trespass . . . requires an unprivileged, intentional intrusion on land in the possession of another.” Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F.Sup. 93, 99 (D.Mass. 1990) citing New England Box Co. v. C&R Const. Co., 313 Mass. 696, 707 (1943). Finally, plaintiffs are not entitled to recover for purely economic losses, such as the “loss of value to their property,” in the absence of physical damage to the property. Garweth Corp., supra at 305; Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107 (1989).
In the present action there is no evidence of physical harm to the plaintiffs’ property or of personal injury. Consequently, plaintiffs have not suffered any com-pensable injury to their person or their property because of any contamination discovered at the 6W Service Area. Accordingly, the defendants are entitled to judgment as a matter of law on Counts II through V because the plaintiffs cannot prove any contamination in, on, or at their property.
C. Count VI: Infliction of Emotional Distress
Plaintiffs’ claims for personal injury and emotional distress are premised solely upon the contamination of the plaintiffs’ property and water supply. However, since plaintiffs have no evidence that their well water is contaminated, they can establish no facts to support such an allegation. As a matter of law, plaintiffs cannot recover for personal injury or emotional distress allegedly occurring prior to the presence of actual contamination being established at their property. Scavone, supra.
Plaintiffs also allege claims of emotional distress because of a fear of future injury. More specifically, plaintiffs allege that they have suffered “severe mental anguish,” apparently, at least in part, because of an alleged “increased risk of diseases” from ingesting and by dermal absorption of contaminated well water. In Scavone, supra the Appeals Court affirmed the dismissal of these very same allegations because Massachusetts does not recognize a cause of action for emotional distress arising out of an alleged fear of future injury. Scavone, supra; Urman v. South Boston Savings Bank, 424 Mass. 165, 171 (1997). Therefore, defendants are entitled to judgment on Count VI for any allegation of emotional distress.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of Defendants Massachusetts Turnpike Authority, F.L. Roberts & Co., Inc., Exxon Corporation and Mobil Corporation is ALLOWED.

Rule 1:28 of the Massachusetts Appeals Court Rules for the Regulation of Appellate Practice allows for a summary disposition by a panel of justices. The precedential value of this opinion has been addressed. In Mark J. Horner v. Boston Edison Company, 45 Mass.App.Ct. 139 (1998), the Appeals Court declined to consider as precedent an unpublished opinion decided pursuant to Rule 1:28. 45 Mass.App.Ct. at 140. The court stated, “we have never suggested that summary decisions of this court issued pursuant to Rule 1:28 may be relied upon or cited as authority in other cases. In fact, we reached the opposite conclusion in at least two other cases.” Id. The court did note, however, that they had left open the possibility that a summary decision could be cited as precedent in a “related" case, although they have had no occasion to do so. Id. at 140-4; see Purvis v. Commissioner of Correction, 29 Mass.App.Ct. 190-92 n. 5 (1990) (court would *438 not rely on a Rule 1:28 decision “[wlithout assessing any similarities and differences between that case and the present one”). The matter at hand is such an occasion as the Rule 1:28 decision cited and the case at hand are different only with respect to the plaintiff. Therefore, Horner and Purvis support my reliance on the unpublished decision of Scavone.

F.L. Roberts & Co., Inc., Exxon Corporation, and Mobil Corporation.

Philip L. Scavone & another v. Massachusetts Turnpike Authority & others; William C. Robbie & another v. Massachusetts Turnpike Authority & others; John L. Cook & another v. Massachusetts Turnpike Authority & others.

“Based upon the same, I have made the following conclusions: A. There has been at least 20,000 gallons of petroleum released into the subsurface at the 6W Site. B. The 6W Site contains contaminants at levels, at hundreds, if not thousands of times greater than the guidelines set forth by the DEP. Further, it is my opinion that the course of the gasoline related compounds detected in the wells in the Kempinski area is the 6W Site. Further, due to the magnitude of the releases at the 6W Site, the location of the Kempinski property, and the numerous detections of gasoline related compounds in 9 of the 11 private water supply wells located in the Timber Valley area, (including but not limited to the Scavone property located at 3 Timber Heights Drive; the McCarthy/Robbie property at 19 Timber Valley Road; the Carbonneau property at 13 Timber Valley Road; the Splane property located at 11 Cook Circle and the properties located at Lots 19-C-4 and 19-C-5) it is my opinion that the Kempinski property has been contaminated by gasoline related products which have been released at the 6W Site and continue to migrate to the Kempinski property. The other sites Usted by Rizzo Associates as having been potential contributors to the groundwater contamination have not been Usted as disposal sites by the Massachusetts DEP, have not demonstrated gross contamination for over 12 years, and have not demonstrated patterns for the contamination to reach the plaintiffs’ property at aU. It is also my opinion that the gasoline related products which have been released at the 6W Site continue to the present date to migrate to the Kempinski property. C. Due to the magnitude of the releases at the 6W Site, and the location of the Kempinski property, and because the contamination is being transported via groundwater through fractured bedrock, in the absence of daily monitoring of the private weUs in the Timber VaUey area, and because of the increasing detection of petroleum contaminants in the Timber Valley area, and the increase in level of the contaminants, it is my opinion that the bedrock aquifer below the Kempinski property, more Ukely than not, contains levels of contaminants which have exceeded and shall continue to exceed, the MCL guidelines of the DEP (which apply to pubUc drinking water) and said water supply is not safe, and is a risk to the residents of the Timber Valley area. D. It is clear that the Timber Valley neighborhood's aquifer, which is a source of water for the neighborhood as weU as the Kempinski property, has been shown by multiple sampling and testing events to be physicaUy impacted by petroleum hydrocarbons. The Kempinski property water supply has been contaminated by petroleum hydrocarbons which have been released at the 6W Service Station and which continue to the present day, to migrate from the 6W Service Station to the Kempinski property.” (Affidavit of Richard G. Kowalski at 16-18.)