Fecteau, J.
This matter is before the court on the Joint Motion to Dismiss or Alternatively for Summary Judgment of Defendants Massachusetts Turnpike Authority (“MTA”), F.L. Roberts & Co., Inc. (“F.L. Roberts”), Exxon Corporation (“Exxon") and Mobil Oil Corporation (“Mobil”). Plaintiffs, John Blackmore and Janet Blackmore, commenced this action against the defendants alleging that petroleum related contaminants originating from a gasoline service area located on the westbound side of the Massachusetts Turnpike known as the 6W Service Area in Charlton (the “6W Service Area”) have created “a condition which caused a substantial and unreasonable interference with the plaintiffs’ use and enjoyment of their property . . .” Plaintiffs seek damages under a single count sounding in private nuisance. As both the plaintiffs and defendants have presented to the court matters outside the pleadings, the motion will be treated as one for summary judgment. For the following reasons, the defendants’ motion is ALLOWED.
BACKGROUND
The MTA owns a gasoline service station on the westbound side of the Massachusetts Turnpike in Charlton, Massachusetts, the 6W Service Area. At different times since 1957, Defendants F.L. Roberts & Co., Exxon and Mobil have leased, and/or operated and/or supplied motor fuel to the gasoline service station at the 6W Service Area. Specifically, from 1957 to 1982, Exxon leased the 6W Service Area. From approximately 1982 to 1990, F.L. Roberts leased the 6W Service Area and Exxon supplied petroleum products to F.L. Roberts for sale. From approximately 1990 to present, Mobil has leased the 6W Service Area.
Plaintiffs own property and reside at 30 Little Mugget Road, Charlton, Massachusetts. Plaintiffs’ *439 property is located more than one-half mile from the 6W Service Area.
In 1990, the MTA engaged Rizzo Associates, Inc. (“Rizzo"), an environmental engineering consulting firm, to conduct an environmental assessment of the 6W Service Area to attempt to identify and remediate any past releases of oil and/or hazardous material to the soil and groundwater. In connection therewith, Rizzo identified contamination in the soil and groundwater at the 6W Service Area. As a precautionary measure, the Massachusetts Department of Environmental Protection, in June 1990, directed the MTA to obtain samples of well water from residential properties located within a radius of slightly more than one-half mile of the 6W Service Area.
In September and October 1990, Rizzo obtained samples from over 100 water wells located on properties near the 6W Service Area. Additionally, between 1991 and April 1999, samples have been obtained from many of the same wells sampled in 1990 on numerous occasions by Rizzo and by other environment consultants engaged by Exxon.
On no occasion, however, has DEP asked or required any defendant to sample the well at plaintiffs’ property. Consequently, there is no evidence of actual contamination in plaintiffs’ water supply.
Petroleum related compounds have been detected in the water supply wells of the neighboring properties of the Blackmore property:
19-C-4 (MTA); 19-C-5 (Burlingame); 19-C-9; 19-C-ll. 13 (Curran); 19-C-ll. 14 (Splane); 19-C-ll. 15 (Carbonneau); 19-C-ll. 18 (McCarthy/Robbie); 19-C-ll.2 (Sherman); 19-C-11.24 (Patrick Scavone); 19-C-ll.26 (Seaman); 19-C-ll.27 (Charles Scavone); 19-C-11.28 (Mulcahy); 19-C-ll.4(Gline); 19-C-l 1.12 (Fifield); 19-C-11.6 (Taylor); and 19-C-ll .9 (Timothy Scavone).
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party has established the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, the non-moving party must respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
The dispute between the parties to this case is whether the plaintiffs have a reasonable expectation of proving actual contamination to their property.
Plaintiffs cannot provide any evidence demonstrating the presence of petroleum related compounds in plaintiffs’ water supply well. As a result, this case is indistinguishable from the case of Scavone v. Massachusetts Turnpike Authority and others[2] (and three consolidated cases),[3] No. 95-P-1927 (App. Ct. December 1997) wherein the Appeals Court, in a Rule 1:28 decision,[4] held that “proof of actual contamination” is necessary to present a claim for damages under a theory of private nuisance. Scavone at 3-4.
The Appeals Court affirmed the dismissal of the three similar actions, all including a common law private nuisance claim, because the plaintiffs could not demonstrate the presence of actual contamination of their property or water supply. Id. at 3. In doing so, the court stated: “(a]bsent proof of actual contamination of their property or water supply from the release of hazardous materials and the resultant damage to their property or the incurring of response costs as a result of the threat of release of hazardous materials, the plaintiffs’ common law claims and statutory claim under G.L. 21E, §5, are barred.” Id., citing Gareth Corp. v. Boston Edison Co., 415 Mass. 303, 305-08 (1993), and Guaranty-First Trust Co. v. Textron, Inc., 416 Mass. 332, 335-38 (1993).
In those three cases, the Appeals Court concluded that the verified materials presented to the motion judges were insufficient to overcome the defendants’ allegations that those plaintiffs could not show actual contamination of their property or water supply or any damage to their properly to support their claims as a matter of law. Scavone, supra at 4.
In the present action, there is no evidence before the court of any release on plaintiffs’ property. The expert affidavit acknowledges the absence of any analytic data confirming the presence of contamination. Rather, the expert testifies that “the Blackmore property, 30 Little Mugget Road, Charlton, Massachusetts, may become impacted by petroleum contaminants which are migrating from the [6W Service Area]” (emphasis added). The expert, Richard G. Kowalski of Lincoln Environmental, Inc., theorizes that because contamination exists in the surrounding area, con *440 tamination will therefore exist on the plaintiffs property sometime in the future.[5] This Court does not find the expert testimony persuasive as it fails to offer anything other than conclusory opinions. Therefore, the expert affidavit, standing alone, does not demonstrate a material issue of fact.
The Scavone decision is consistent with Massachusetts precedent. The law is that in the absence of physical damage to property, pure economic losses such as plaintiffs’ alleged “loss of value of their property” are not recoverable under common tort law. Garweth Corp., supra at 305; Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107 (1989). See also Asiala v. City of Fitchburg, 24 Mass.App.Ct. 13, 17 (1987) (with regard to private nuisance, plaintiff proved that her property was injured).
To the extent that plaintiffs rely on Lewis v. General Electric, 37 F.Sup.2d 55 (U.S. District Ct. Feb. 12, 1999), such reliance is misplaced. In Lewis, as in the instant case, the plaintiffs did not establish actual contamination on their property. However, contrary to Massachusetts precedent, including the Appeals Court decision in Scavone, supra the Lewis court permitted a private nuisance action to proceed even though the plaintiffs property was not actually contaminated. That ruling has no precedential value in the instant case. It is inconsistent with Massachusetts law requiring plaintiffs to show proof of actual contamination to maintain a private nuisance claim. Indeed, the Lewis court failed to distinguish or cite to the Scavone decision.
Moreover, the Lewis court also concluded that fear of future harm can give rise to a claim for damages. It is well established in a recent case that Massachusetts does not recognize a cause of action for an alleged fear of future injury. Urman v. South Boston Savings Bank, 424 Mass. 165, 171 (1997).
In sum, plaintiffs cannot maintain a private nuisance claim because they have no evidence of any contamination in, on, or at their property. Therefore, the defendants are entitled to judgment as a matter of law on plaintiffs’ common law private nuisance claim.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of Defendants Massachusetts Turnpike Authority, F.L. Roberts & Co., Inc., Exxon Corporation and Mobil Corporation is ALLOWED.

F.L. Roberts & Co., Inc., Exxon Corporation, and Mobil Corporation.

Philip L. Scavone & another v. Massachusetts Turnpike Authority & others; William C. Robbie & another v. Massachusetts Turnpike Authority & others; John L. Cook & another v. Massachusetts Turnpike Authority & others.

Rule 1:28 of the Massachusetts Appeals Court Rules for the Regulation of Appellate Practice allows for a summary disposition by a panel of justices. The precedential value of this opinion has been addressed. In Mark J. Horner v. Boston Edison Company, 45 Mass.App.Ct. 139 (1998), the Appeals Court declined to consider as precedent an unpublished opinion decided pursuant to Rule 1:28. 45 Mass.App.Ct. at 140. The court stated, “we have never suggested that summary decisions of this court issued pursuant to Rule 1:28 may be relied upon or cited as authority in other cases. In fact, we reached the opposite conclusion in at least two other cases." Id. The court did note, however, that they had left open the possibility that a summary decision could be cited as precedent in a "related” case, although they have had no occasion to do so. Id. at 140-4; see Purvis v. Commissioner of Correction, 29 Mass.App.Ct. 190-92 n. 5 (1990) (court would not rely on a Rule 1:28 decision ”[w]ithout assessing any similarities and differences between that case and the present one"). The matter at hand is such an occasion as the Rule 1:28 decision cited and the case at hand are different only with respect to the plaintiff. Therefore, Horner and Purvis support my reliance on the unpublished decision of Scavone.

“Based upon the same, I have made the following conclusions: A. There has been at least 20,000 gallons of petroleum released into the subsurface at the 6W Site. B. The 6W Site contains contaminants at levels, at hundreds, if not thousands of times greater than the guidelines set forth by the DEP. Further, it is my opinion that the source of the gasoline related compounds detected in the wells in the Timber Valley area is the 6W Site. Further, due to the magnitude of the releases at the 6W Site, the location of the Blackmore property, and the numerous detections of gasoline related compounds in 9 of the 11 private water supply wells located in the Timber Valley area, (including but not limited to the Scavone property located at 3 Timber Heights Drive; the McCarthy/Robbie property at 19 Timber Valley Road; the Carbonneau property at 13 Timber Valley Road; the Splane property located at 11 Cook Circle . . . and the properties located at Lots 19-C-4 and 19-C-5) it is my opinion that the fractured bedrock aquifer below the Black-more property may become contaminated by gasoline related products which have been released at the 6W site and continue to migrate toward the Blackmore property. The other sites listed by Rizzo Associates as having been potential contributors to the groundwater contamination have not been listed as disposal sites by the Massachusetts DEP, have not demonstrated gross contamination for over 12 years, and have not demonstrated patterns for the contamination to reach the plaintiffs' property at all. It is also my opinion that the gasoline related products which have been released at the 6W Site continue to the present date to migrate to the Blackmore property. C. Due to the magnitude of the releases at the 6W Site, and the location of the Blackmore property, and because the contamination is being transported via groundwater through fractured bedrock, in the absence of daily monitoring of the private wells in the Timber Valley area, and because of the increasing detection of petroleum contaminants in the Timber Valley area, and the increase in level of the contaminants, it is my opinion that the bedrock aquifer below the Blackmore property, more likely than not, is threatened by petroleum contaminants. D. It is clear that the fractured bedrock below the Timber Valley neighborhood, which is the source of water for the neighborhood has been shown by multiple sampling and testing events to be physically impacted by petroleum hydrocarbons . . .” (Affidavit of Richard G. Kowalski at 16-18.)