## Swisher v. Caterpillar Incorporated

C.P. of York County, no. 2000-SU-02453-01.

*Leah B. Graff,* for plaintiff.

*Gino J. Benedetti* and *Kevin E. Raphael,* for defendant.

BRILLHART, *J.,* December 23, 2003—

## ORDER

Pending before the court is the following motion for summary judgment, filed by the defendant, Caterpillar Incorporated, which provides, in pertinent part:

(1) The plaintiff, James K. Swisher, was employed by Guardsmark Inc. as a security guard pursuant to a July 27, 1998 employment contract.

(2) Swisher entered into the employment contract knowingly and voluntarily with no fraud, accident or mutual mistake.

(3) The employment contract contains the following unambiguous and express release:

"Employee understand[s] that he (she) will be assigned to the premises or facilities of one or more clients of Guardsmark and in consideration of such assignment(s) hereby waives any and all causes of action which employee may have against such client(s) arising out of or in connection with such assignment(s)."

(4) Pursuant to his employment contract, Swisher was assigned to work on the premises of Caterpillar, a Guardsmark client.

(5) On September 17, 1998, while working as a security guard at Caterpillar's York facility, Swisher sustained injuries that he alleges were caused by Caterpillar's negligence. Swisher has received workers' compensation from Guardsmark for his injuries.

(6) Despite the plain meaning of the release, on May 19, 2000, Swisher filed suit against Caterpillar.

(7) The release clearly contemplated that Swisher waived his rights to any and all causes of action which he, as a Guardsmark employee, might have against any Guardsmark client, such as Caterpillar.

(8) As no genuine issue of material fact exists that Swisher released Caterpillar from any and all causes of action, summary judgment is appropriate.

The Pennsylvania Rules of Civil Procedure govern motions for summary judgment.

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pennsylvania Rules of Civil Procedure, Rule 1035.2 motion.

Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989); *Baker v. Cambridge Chase Inc.,* 725 A.2d 757 (Pa. Super. 1999), *appeal denied,* 560 Pa. 716, 745 A.2d 1216

(1999). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 684 A.2d 137 (1996), *allocatur denied,* 548 Pa. 628, 693 A.2d 967 (1997). Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Myers v. McHenry,* 398 Pa. Super. 100, 580 A.2d 860 (1990). The court must accept as true all well-pleaded facts in the opposing party's pleadings as well as any admissions of record. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991).

Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. *Godlewski v. Pars Manufacturing Co.,* 408 Pa. Super. 425, 597 A.2d 106 (1991). Summary judgment should only be granted in those cases which are free and clear from doubt. *Johnson v. Harris,* 419 Pa. Super. 541, 615 A.2d 771 (1992); *Spain v. Vicente,* 315 Pa. Super. 135, 461 A.2d 833 (1983). Summary judgment serves to eliminate the waste of time and resources of both litigants and the court in cases where a trial would be a useless formality. *Liles v. Balmer,* 389 Pa. Super. 451, 567 A.2d 691 (1989); *Electronic Laboratory Supply Co. v. Cullen,* 712 A.2d 304 (Pa. Super. 1998); *Harman on Behalf of Harman v. Borah,* 720 A.2d 1058 (Pa. Super. 1998), *allocatur granted,* 1999 Pa. Lexis 2228, *reversed in part,* 562 Pa.

455, 756 A.2d 1116 (2000); *Henninger v. State Farm Insurance Co.,* 719 A.2d 1074 (Pa. Super. 1998).

A summary of the uncontested facts is set forth as follows. On July 27, 1998, Swisher knowingly and voluntarily entered into an employment contract with Guardsmark.[1] See exhibit 1 (containing July 27, 1998 employment contract). Swisher testified that he carefully read and understood the contract before signing it:

"Q. But when you got the application, you read it. Right?

"A. Yes.

"Q. And you read through it thoroughly and carefully?

"A. Yes.

"Q. To make sure that you understood everything that was in here. Correct?

"A. Yes. . . .

"Q. When you signed the application, you knew that you were signing for everything that preceded your signatures. Correct?

"A. Yes.

"Q. And that's why you read it carefully?

"A. Yes." [Deposition testimony, pp. 88 and 89.]

Similarly, Swisher testified that it was his practice to carefully read employment applications and understand them before filling them out:

"Q. Do you make it a practice of always reading applications carefully before you fill them out?

"A. Yes.

"Q. To make sure that it's truthful and accurate?

---

1. The employment agreement is contained with the employment application at pages 19 through 22.

"A. Yes.

"Q. Do you make sure you understand everything that's in the application?

"A. Yes.

"Q. And that is what you did in this case?

"A. Yes. As far as I can remember, I mean, that's what I always did." [Deposition testimony, p. 89.]

Swisher also testified that he voluntarily decided to work for Guardsmark and, significantly, that all of the conditions of his employment were set forth in his employment contract:

"Q. At some point you were offered a job. Correct?

"A. Yes.

"Q. And you understood that you were accepting a job based on all the conditions and terms in your employment agreement. Correct?

"A. Yes.

"Q. And that you voluntarily decided to work for Guardsmark. Right?

"A. Yes." [Deposition testimony, pp. 90 and 91.]

Swisher's testimony reveals that he fully expected that both he and Guardsmark would proceed pursuant to the terms of his employment agreement:

"Q. And when you were offered the job, you were pleased that you were being given the offer to work?

"A. Yes.

"Q. And you were willing to comply with all their terms of the job?

"A. Yes.

"Q. And of the employment application?

"A. Yes.

"Q. And you expected Guardsmark would similarly comply with all the terms and requirements of the employment?

"A. Yes.

"Q. And to your knowledge, they did so?

"A. I guess, yes." [Deposition testimony, pp. 91 and 92.]

The employment contract fully anticipated that Swisher would be assigned to work on the premises of a Guardsmark client. Accordingly, the contract required Swisher to waive any rights that might accrue against any Guardsmark client as a result of his work assignment:

"Employee understands that he (she) will be assigned to the premises or facilities of one or more clients of Guardsmark, and in consideration of such assignment(s) hereby waives any and all causes of action which employee may have against such client(s) arising out of or in connection with such assignment(s)."

Pursuant to the contract terms, Swisher was assigned to work at Caterpillar's York facility. On September 17, 1998, while on the job, Swisher hurt his knee. [Deposition testimony, pp. 106 and 107.] Swisher reported his injury to a supervisor but continued to work. [Deposition testimony, p. 107.] The next day, however, he was unable to work and sought medical treatment for his injury. [Deposition testimony, p. 107.] He has not returned to work for Guardsmark since that time and has received workers' compensation for his injuries. [Deposition testimony, p. 37.]

Caterpillar argues that it is entitled to summary judgment as there is no question that Swisher released Cater-

pillar from "any and all" causes of action related to his employment with Guardsmark. Swisher argues that the instant contract of employment constitutes a clear contract of adhesion and should be given no legal effect. Both parties agree that there are no Pennsylvania cases directly on point.

Caterpillar cites to the case of *Horner v. Boston Edison Company,* 695 N.E.2d 1093 (Mass. App. Ct. 1998), in which the plaintiff was employed to provide on-site security services for his employer's clients. As part of his employment application, the plaintiff in *Horner* agreed to "Waive And Forever Release Any Rights [He] Might Have to make claims against any client or customer of [his employer] for damages based upon injuries which are covered under such workers' compensation statutes." *Id.* at 1095. When the plaintiff was injured at a job site, he sued his employer's client for negligence, arguing that the release was contrary to public policy and, therefore, not enforceable. *Id.* at 1094. The court rejected this argument and granted summary judgment. The court held that the release did not violate public policy as the employee was eligible to recover compensation for his injuries through workers' compensation. *Id.* The court elaborated that: "[v]iewed as a whole, the release is not extracted by the employer as a shield against its own liability but rather as protection for its customers for those risks assumed by its employees who, in turn, are covered by workers' compensation insurance." *Id.* at 1096.

The court further concluded that the release was neither unconscionable nor ambiguous.

Caterpillar further cites to the case of *Edgin v. Energy Operations Incorporated,* 961 S.W.2d 724, 727 (Ark. 1998). In granting summary judgment, the court also

concluded that the release did not violate public policy and explained that in requiring such a release "[t]he employer is not attempting to escape liability entirely, but is, instead, attempting to shield its clients from separate tort liability for those injuries that are covered by workers' compensation. . . ." *Id.* at 727.

Swisher argues that it is evident from the language of the employment agreement itself that the parties were placed in an unequal bargaining position and that Swisher was faced with a take it or leave it proposition. Swisher points to the introductory paragraph to the employment agreement, which provides the following:

"Your application for employment will be processed with due diligence. Upon completion of your preliminary background investigation and receipt of temporary clearance, you will be notified to report for issuance of uniforms, insignias, identification badges and other Guardsmark equipment. Upon acceptance, you will be required to sign the following employment agreement. The agreement shall not become binding upon Guardsmark until reviewed and approved by the compliance control officer in Guardsmark's executive offices in Memphis, Tennessee. At Guardsmark's option, you may be permitted to commence work prior to receipt of such final approval."

Swisher argues that the words, "you will be required to sign," render this employment agreement a contract of adhesion and further asserts that the contract was not valid because it violated public policy. Swisher cites to the case of *Princeton Sportswear Corporation v. H & M Associates,* 510 Pa. 189, 507 A.2d 339 (1986), in support of the proposition that public policy is generally antagonistic toward carte blanche exculpation from li-

ability. Some courts have held that contracts against liability for negligence must be strictly construed since they are not favorites of the law, and such contracts must spell out the intention of the parties with the greatest of particularity and show the intent to release from liability beyond doubt by expressed stipulation and no inference from words of general import can establish it.

In the case of *Stebok v. American General Life and Accident Insurance Company,* 715 F. Supp. 711 (2003), the plaintiff brought an action against his employer for wages and benefits; however, arguing that the contract was one of adhesion and should not be enforced. The defendant moved for summary judgment, contending that the plaintiff was not entitled to the claimed wages or benefits under the terms of the employment contract. The court granted the defendant's motion for summary judgment, stating that an employment agreement is not a contract of adhesion, even when an employee is told to "sign or be terminated."

"Merely alleging that one entered into an agreement which he would not have entered if his financial circumstances were more secure does not render a contract unenforceable. *Harrison v. Fred S. James P.A. Incorporated,* 558 F. Supp. 438, 443 (E.D. Pa. 1983). Nor is an allegation of unequal bargaining power sufficient, by itself, to render a contract invalid. *Stanley A. Klopp Incorporated v. John Deere Company,* 510 F. Supp. 807, 811 (E.D. Pa. 1981), *affirmed,* 676 F.2d 688 (3d Cir. 1982); *Witmer v. Exxon Corporation,* 495 Pa. 540, 434 A.2d 1222, 1228 (1981)." *Id.* at 714. *See Harrison v. James,* 558 F. Supp. 438 (E.D. Pa. 1983).

In alleging that the employment agreement is a contract of adhesion and thereby unenforceable, Swisher's

sole rationale is that Guardsmark occupied a better bargaining position. As set forth in the *Stebok* case, this is not enough to render his employment contract invalid. To invalidate the contract, Swisher must allege "both a lack of meaningful choice about whether to accept the provision in question and that the disputed provisions were so one-sided as to be oppressive." *Id.* at 714. In the instant matter, Swisher conceded that he voluntarily decided to work for Guardsmark, that he was pleased to be offered the job, that he was happy with Guardsmark and was treated fairly by the company. These facts do not support Swisher's contention that he had no meaningful choice or that Guardsmark's contract was oppressive. Therefore, we Grant the defendant's motion for summary judgment.

The prothonotary is directed to provide notice of the entry of this order as required by law.