NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-99

MICHAEL C. STEWART, JR.

vs.

CALLAHAN, INC. & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal stems from a physical altercation between two workers at a construction jobsite.  The plaintiff, Michael C. Stewart, Jr., filed suit against both defendants, Callahan, Inc. (Callahan) and Shawnlee Construction LLC (Shawnlee), for negligence and against Shawnlee for battery.  A Superior Court judge granted summary judgment for the defendants after concluding that Stewart's employment agreement (agreement) barred him from suing the defendants for injuries covered by the Workers' Compensation Act (act), G. L. c. 152.  Stewart appeals from the summary judgment entered on the negligence claim

---

[1] Shawnlee Construction LLC.

against Callahan and the battery claim against Shawnlee.  We affirm.

Background.  In June 2019, Aerotek, a temporary staffing agency, employed Stewart as a carpenter.  Before starting his temporary assignment, Stewart signed the agreement, which included a waiver of liability provision (waiver) discussed in further detail below.[2]  Aerotek assigned him to work on a construction project beginning June 4, 2019.  At the jobsite, Callahan was the general contractor and Shawnlee was the framing subcontractor.  A Shawnlee employee would direct the workers and assign tasks each day.

On June 7, 2019, a Shawnlee employee punched Stewart while at work.  After the incident, Stewart filed a workers' compensation claim with Aerotek's insurer.  On January 14, 2020, Stewart entered into a lump sum workers' compensation agreement pursuant to G. L. c. 152, § 48, for Aerotek's insurer to pay him $25,000.

Discussion.  1.  Standard of review.  We review the grant of summary judgment de novo.  See Le Fort Enters. v. Lantern 18, LLC, 491 Mass. 144, 149 (2023).  We view the record evidence, and all reasonable inferences that can be drawn therefrom, in

_____

[2] Stewart testified at his deposition that he did not recall signing the agreement.  However, he stipulated that he does not dispute his signing for the purposes of the motion for summary judgment, and he has not raised the argument on appeal.

2

the light most favorable to the nonmoving party, here, the plaintiff.  Blake v. Hometown Am. Communities, Inc., 486 Mass. 268, 272 (2020).  "Summary judgment is appropriate where there is no material issue of fact in dispute, and the moving party is entitled to judgment as a matter of law."  Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021), citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

2.  The waiver clause.  Stewart argues that the waiver clause in the agreement is ambiguous as to whether the phrase "Client's customer" applied to Callahan, and therefore the agreement was insufficient to bar Stewart's negligence claim against Callahan.  We disagree.

"When contract language is unambiguous, it must be construed according to its plain meaning."  Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017).  Contractual language is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one."  Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998).  "Finally, we construe a contract as a whole, so as 'to give reasonable effect to each of its provisions.'"  James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 669 (2018), quoting J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986).

The liability provision of the agreement states, in relevant part, the following:

> "18. <u>Limitation of Liability</u> - [1] To the extent permitted by law, you . . . waive any and all rights you have, or may have, to claim or assert a claim, suit, action or demand of any kind . . . against <u>Client or Client's customers</u> . . . arising directly or indirectly out of your employment with Aerotek, Inc, except as to any claims you assign to Aerotek, Inc under this Agreement. [2] <u>You recognize and agree that Aerotek, Inc provides workers' compensation coverage</u> for such things as on-the-job injuries or occupational diseases incurred while on Assignment for Aerotek, Inc, and to the extent permitted by law, <u>you agree to look solely to Aerotek, Inc and/or its insurer for damages and/or expenses for any such claims, suits, actions</u>, or demands relating to bodily injury, illness, or death incurred while on Assignment. [3] In furtherance of the foregoing and in recognition that any work related injuries which might be sustained by you are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from <u>suits against the Client</u> based on the same injury or injuries, and to the extent permitted by law, YOU HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS YOU MIGHT HAVE to make claims or bring suit against the Client for damages based upon injuries which are covered under such Workers' Compensation statutes." (Emphases added.)

The agreement defines Shawnlee as the "Client."

Stewart argues that each sentence addresses a different limitation on liability and should be read individually, with "one not affecting the other." First, he asserts that "Client's customers" is an ambiguous phrase in the context of the construction industry, where it is not common to refer to a general contractor as the "customer" of a subcontractor, so the first sentence does not apply to Callahan. Next, Stewart contends the second sentence pertains only to workers'

4

compensation claims and does not bar other types of claims or claims against anyone other than Aerotek. Lastly, he claims that the third sentence only protects the "Client," which does not include Callahan.

We disagree that the terms are ambiguous and that the correct interpretation of the agreement isolates each sentence. As a subcontractor, Shawnlee contracted only with Callahan and had no relationship with the property owner, so "Client's customers" could not refer to anyone other than Callahan. Moreover, even if individual phrases were ambiguous in isolation, the contract should be read as a whole. See James B. Nutter & Co., 478 Mass. at 669. The first sentence, waiving liability against Aerotek's "Client" and "Client's customers," plainly relates to the second sentence, which acknowledges that Aerotek provides workers' compensation and requires Stewart to look only to Aerotek for "any such claims, suits, actions, or demands" relating to personal injury. The third sentence clarifies further that the purpose of the waiver is to prevent an employee from circumventing the act's exclusivity provisions by seeking workers' compensation from Aerotek and then suing the Client for the same injuries. Each sentence is not a separate limitation on liability. Instead, the paragraph as a whole defines the scope of the waiver and from what sources an injured employee can and cannot seek damages. We conclude that when

5

read as a whole, the agreement unambiguously constituted a waiver by Stewart of his claims against both Callahan and Shawnlee.  The judge thus properly granted summary judgment for Callahan on Stewart's negligence claim.

3.  Waiver for intentional torts not precluded by public policy.  Stewart also argues that the agreement cannot preclude liability for the battery claim against Shawnlee because waivers of liability for intentional torts are unenforceable on public policy grounds.  Again, we disagree.

Under the act, workers may receive compensation for intentional torts committed in the workplace, including physical assaults by coemployees.  See Doe v. Purity Supreme, Inc., 422 Mass. 563, 566-567 (1996) (act applies to rape and assault).  The system contemplated by the act is designed to replace, not augment, piecemeal tort litigation.  Estate of Moulton v. Puopolo, 467 Mass. 478, 483 (2014).  Thus, the exclusivity provision of the act precludes any additional tort action for claims covered by workers' compensation, absent waiver by the employee.  See G. L. c. 152, §§ 23-24; Estate of Moulton, 467 Mass. at 483-484 (employee may opt out of act only by notifying employer in writing, at time of hiring contract, that employee is not waiving right to bring common-law tort suits).  This statutory scheme represents "the Legislature's balance of competing societal interests," protecting injured employees with

6

a quick, guaranteed recovery while limiting traditional remedies (citation omitted).  Molina v. State Garden, Inc., 88 Mass. App. Ct. 173, 178 (2015).  Here, if Stewart were to try to recover against his direct employer, Aerotek, his suit clearly would be barred by the exclusivity provision of the act because he did not waive his right to workers' compensation at the time of his hiring.

We are unpersuaded by Stewart's argument that, although the act barred him from suing Aerotek for an intentional tort, his contractual waiver of liability for third party Shawnlee was unenforceable.  It is not against public policy to enforce contractual releases mirroring the scheme of the act, by providing an employee with an avenue for workers' compensation and precluding additional recovery against third parties.  See Molina, 88 Mass. App. Ct. at 181-182 (enforcing staffing agency employment contract, which released customers and clients of staffing agency from liability).  The waiver does not shield the employer, but instead acts "as protection for [the staffing agency's] customers for those risks assumed by its employees who, in turn, are covered by workers' compensation insurance." Horner v. Boston Edison Co., 45 Mass. App. Ct. 139, 142 (1998). The act itself, which represents the Legislature's balancing of policy interests, contemplates the scenario where the employee has both a "general" and "special" employer, and the employee is

7

barred from suing one while receiving workers' compensation from the other.  See G. L. c. 152, § 18; <u>Molina</u>, 88 Mass. App. Ct. at 180-181 (section 18 applicable when staffing agency, the general employer, immunizes its client, the special employer, from suit).  Because the act covered the type of workplace injury Stewart suffered, and he had the ability to recover through Aerotek, the agreement barring him from seeking additional recovery from Aerotek's clients was enforceable.  We therefore conclude that the judge properly granted summary judgment for Shawnlee on Stewart's battery claim.

<u>Judgment affirmed</u>.

By the Court (Grant,
   Brennan & Smyth, JJ.[3]),

Clerk

Entered:  December 19, 2025.

---

[3] The panelists are listed in order of seniority.