MARK FLEMING & another[1] *vs.* SHAHEEN BROTHERS, INC., & another.[2]

No. 07-P-255.

Essex. December 10, 2007. - February 21, 2008.

Present: GELINAS, SMITH, & SIKORA, JJ.

*Practice, Civil,* Summary judgment. *Workers' Compensation Act,* Action against employer, Recovery from third person. *Contract,* Implied contract, Employment. *Words,* "Employee," "Employer."

A stipulation of voluntary dismissal signed by the plaintiff and one of the defendants in a civil action settled the dispute between those two parties only, and did not constitute the judgment for all purposes; therefore, the plaintiff's appeal from summary judgment that a Superior Court judge had granted years earlier in favor of the other defendant in that action was properly before this court, despite significant delay in the entry of final judgment. [225]

In a civil action for damages based on allegations of negligence against one of the defendants, who owned certain premises on which the plaintiff was injured in the course of operating a forklift, a Superior Court judge properly granted summary judgment in favor of that defendant, where it was immune from liability under G. L. c. 152, the workers' compensation statute, given that the plaintiff had a direct employment relationship with that defendant (the employer), even though another entity formally paid the plaintiff's wages and workers' compensation benefits, and that the employer was an insured person liable for the payment of compensation. [226-229]

CIVIL ACTION commenced in the Superior Court Department on October 22, 1998.

A motion for partial summary judgment was allowed by *Isaac Borenstein,* J., on August 29, 2002, and entry of judgment was ordered by *Howard J. Whitehead,* J., on December 27, 2006.

*Thomas J. Gleason* for the plaintiffs.

*Emily G. Coughlin* for Shaheen Brothers, Inc.

[1]Michelle Fleming.

[2]Crown Equipment Corporation, also known as Crown Controls Corporation.

SMITH, J. The plaintiffs, Mark Fleming (Fleming) and his wife, Michelle Fleming, filed an action in the Superior Court against the defendants, Shaheen Brothers, Inc. (Shaheen), and Crown Equipment Corporation, also known as Crown Controls Corporation (Crown), alleging that Fleming was injured on Shaheen's premises while operating a forklift, designed and manufactured by Crown. The complaint was in six counts, three counts against Shaheen, alleging negligence (counts I and II), and breach of warranty (count III), and two counts against Crown, alleging negligent design and breach of warranty (counts IV and V). Count VI was filed by Fleming's wife against both Shaheen and Crown for loss of consortium. In the complaint, Fleming alleged that when he was injured, New Boston Select Group, Inc. (NBS), was his employer, not Shaheen.

Shaheen filed a motion for summary judgment on counts I and II claiming that it was Fleming's employer and, therefore, pursuant to the Workers' Compensation Act, G. L. c. 152, it was immune from an action for damages arising from his injury. The motion judge ruled that because Shaheen controlled and directed Fleming's work, and because Shaheen was liable for payment of Fleming's workers' compensation benefits, Shaheen was immune from suit pursuant to c. 152. Shaheen's motion for summary judgment was allowed on August 29, 2002. No motion for separate entry of judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), was filed at that time.

The case thereafter proceeded against Crown. Fleming and Crown settled in October, 2004, and filed a stipulated dismissal with prejudice pursuant to Mass.R.Civ.P. 41(a), 365 Mass. 803 (1974). On October 27, 2006, Fleming filed a motion for entry of judgment as to the summary judgment in favor of Shaheen. That motion was allowed over Shaheen's objections, and a final judgment entered in December, 2006. Fleming appealed from so much of the judgment as pertained to the dismissal of his first two claims against Shaheen; Shaheen cross-appealed from the order allowing Fleming's motion for entry of judgment. In its cross appeal, Shaheen argues that Fleming's right to appeal terminated within thirty days of the filing of the stipulation of voluntary dismissal under Mass.R.Civ.P. 41(a), which was docketed on October 26, 2004. Relying on Mass.R.Civ.P. 58(a),

as amended, 371 Mass. 908 (1977), Shaheen claims the dismissal, upon being filed, constituted the judgment for all purposes, and that no separate document was necessary. This is so, Shaheen argues, either because the dismissal pertained to the entire action, as its somewhat expansive language arguably suggests, or because it disposed of all the remaining claims in the case following the 2002 dismissal by summary judgment of the negligence counts against Shaheen.[3]

Our review of the record convinces us that the stipulation of dismissal, signed by the attorneys for Crown and Fleming, settled the dispute between those two parties only, despite its broad language. This conclusion is supported by the transcript of the October 8, 2004, settlement hearing, at which the judge stated that he would await a motion for entry of final judgment as to Shaheen, which counsel for Shaheen stated he had. Notwithstanding counsel's assurance, no motion for entry of final judgment was filed until 2006. Contrary to Shaheen's assertion, entry of the final judgment in December, 2006, was not improper under Mass.R.Civ.P. 58(a), as the delay in applying to the court "for formal entry of a separate document of judgment under rule 58 does not constitute a waiver of the[] right to have such judgment entered." *Zielinski* v. *Connecticut Valley Sanitary Waste Disposal, Inc.*, 70 Mass. App. Ct. 326, 330 (2007) (seven-year delay from allowance of defendant's motion for summary judgment, and plaintiffs' motion for entry of judgment). Concluding it is properly before us, we proceed to address the merits of Fleming's appeal, and affirm the summary judgment entered below.

*Facts.* Sometime before March, 1998, Fleming went to Sha-

---

[3]Although the issue is not raised by either party, the record does not disclose that counts III and VI against Shaheen, for breach of warranty and loss of consortium, were ever adjudicated or dismissed. These counts inferrably rise or fall on the disposition of the negligence claims against Shaheen which were dismissed in the December 28, 2006, judgment. We therefore consider the appeal despite the absence of the "express determination" required by Mass.R. Civ.P. 54(b), as doing so here not undermine the purpose of the rule, i.e., "to avoid the possible injustice of a delay in entering judgment on a *distinctly separate claim* . . . until the final adjudication of the entire case by making an immediate appeal available." *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 383 n.5 (2000), quoting from 10 Wright, Miller & Kane, Federal Practice and Procedure § 2654, at 33 (1998) (emphasis added).

heen's premises to apply for a warehouse job. Fleming completed an application for employment and interviewed with Shaheen's operations manager. Shaheen hired Fleming as a temporary employee to work in its warehouse, and set his hourly wage. Fleming was trained by Shaheen's staff; he worked on the warehouse's premises and was under the direction of Shaheen employees. After Fleming's first ninety days of employment, Shaheen had the exclusive right to decide whether to continue Fleming's temporary employment or make him a permanent employee. Shaheen could fire him at any time.

Shaheen regularly used NBS to pay its temporary employees, like Fleming, and to handle related administrative functions. Shaheen paid NBS an amount equivalent to Fleming's salary, plus a service fee. In return, NBS paid Fleming's wages, withheld Federal and State taxes, and provided unemployment insurance. NBS also paid the workers' compensation insurance premiums for Fleming, although he was also covered under Shaheen's workers' compensation policy.

NBS obtained all the information necessary to conduct its payroll through applications which NBS provided to Shaheen. Similarly, Fleming recorded his hours on a time sheet, which Shaheen provided to NBS. Fleming had no contact with NBS, was never introduced to anyone from NBS, had never been to any NBS location, and only discovered its name when he received his first paycheck. Two weeks after he was hired, Fleming was injured in a work-related accident while operating a forklift. Shaheen notified NBS about the accident and NBS filed the "first report of injury" with the Division of Industrial Accidents. Fleming then began receiving workers' compensation benefits from NBS's insurer.

*Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

*Discussion.* A two-part test determines whether an employer is immune from liability under the workers' compensation stat-

ute, G. L. c. 152. See *Lang* v. *Edward J. Lamothe Co.*, 20 Mass. App. Ct. 231, 232 (1985). "[A] direct employment relationship must exist, and 'the employer must be an insured person liable for the payment of compensation.' " *Numberg* v. *GTE Transp., Inc.*, 34 Mass. App. Ct. 904, 904 (1993), quoting from *Lang, supra.* In this case, Shaheen was Fleming's employer and liable for his workers' compensation payments. Therefore, Shaheen is immune from Fleming's negligence suit.

General Laws c. 152, § 1(4), inserted by St. 1935, c. 406, defines an "employee" as "every person in the service of another under any contract of hire, express or implied, oral or written. . . ." General Laws c. 152, § 1(5), defines an "employer" as "an individual, partnership, association, corporation or other legal entity . . . employing employees subject to this chapter. . . ."

As to the first part of the test, in order to determine whether an employer-employee relationship exists, "the finder of fact must identify 'who has direction and control of the employee and to whom does he owe obedience in respect of' the performance of his work." *Patterson* v. *Liberty Mut. Ins. Co.*, 48 Mass. App. Ct. 586, 591 n.13 (2000), quoting from *Chisholm's Case*, 238 Mass. 412, 419 (1921). Method of payment for work, though important, is not controlling in determining the terms of an employment relationship. *McDermott's Case*, 283 Mass. 74, 76 (1933). "The primary test is whether one has a right to control the individual's work performance." *National Assn. of Govt. Employees* v. *Labor Relations Commn.*, 59 Mass. App. Ct. 471, 474 (2003).

Here, there was a direct employment relationship between Shaheen and Fleming. It is not disputed that Shaheen independently interviewed and hired Fleming, exclusively controlled Fleming's training, hours and job duties, supervised Fleming's work and indirectly paid his wages and workers' compensation benefits. NBS, on the other hand, formally paid Fleming's wages and workers' compensation benefits, but had no actual control over hiring, firing, or other work conditions.[4] Fleming never had any contact with NBS prior to the accident other than receiv-

---

[4]Fleming argues that NBS had, by virtue of the contract between Shaheen and NBS, at least a theoretical ability to hire and fire him. However, the

ing paychecks from its payroll department. All information collected by NBS from Fleming, through Shaheen, related to payroll and administrative functions.

Furthermore, there is nothing in the record that demonstrates an implied employment contract between Fleming and NBS. An implied contract can be inferred from the conduct of the parties where one agrees to render services in exchange for payment by the other. See *Cameron* v. *State Theatre Co.*, 256 Mass. 466, 468 (1926). Fleming did not provide any service to NBS and NBS only provided a payroll service for Shaheen. Where the underlying facts are not disputed, whether an entity is an employer is a matter of law for the court. See *Schofield's Case*, 272 Mass. 229, 231 (1930). Here, based on the record, the motion judge properly concluded that Shaheen employed Fleming, satisfying the first portion of the immunity test.

Fleming contends that Shaheen was not liable for his workers' compensation benefits, as required by the second prong of the workers' compensation immunity test, because he was leased by his "general employer" (NBS), to a "special employer" (Shaheen).[5] "Under § 18 the [general] employer upon whom liability for making workers' compensation payments has been placed shall have the burdens and immunities of the Act; the other [special] employer will have neither." Nason, Koziol & Wall, Workers' Compensation § 7.17, at 168 (3d ed. 2003). See *Numberg* v. *GTE Transp., Inc.*, 34 Mass. App. Ct. at 905.

In this case, however, there are no facts indicating that NBS was Fleming's general employer. NBS cannot be considered a general employer if it did not exercise any control over Fleming's work duties; performing payroll functions does not amount

---

contract between NBS and Shaheen is not in the record. Whether NBS could fire Fleming is a significant point because the employment issue turns on whether NBS had a right of control over Fleming. There is nothing in the materials before the motion judge that raises the claim to a material issue of fact on this question.

[5]General Laws c. 152, § 18, inserted by St. 1969, c. 755, § 2, provides:

> "In any case where there shall exist with respect to an employee a general employer and a special employer relationship, as between the general employer and the special employer, the liability for the payment of compensation for the injury shall be borne by the general employer or its insurer, and the special employer or its insurer shall be liable for such payment if the parties have so agreed. . . ."

to a working relationship. See *Cameron* v. *State Theatre Co.*, 256 Mass. at 468 (control and actions of the parties determine employment relationship). Unlike the worker in *Ramsey's Case*, 5 Mass. App. Ct. 199, 200-203 (1977), where the court held that the general employer was responsible for workers' compensation benefits despite the special employer's control over the employee, here, Fleming was not placed by NBS at Shaheen and did not have any prior connection to NBS.

Furthermore, NBS's payment of Fleming's workers' compensation insurance has no bearing on the issue of immunity. To satisfy the second prong of the immunity test, the insured person must only be "liable for the payment of compensation." *Lang* v. *Edward J. Lamothe Co.*, 20 Mass. App. Ct. at 232. The employer need not actually pay the insurance premiums to benefit from the workers' compensation exclusivity bar. *Ibid.* Here, Shaheen carried its own workers' compensation insurance which it paid for as the named insured. It also paid NBS the cost of additional workers' compensation coverage for those Shaheen employees paid through NBS.

We affirm the allowance of Shaheen's motion for summary judgment and deny Shaheen's motion for double costs and attorney's fees.

*So ordered.*