# United States Court of Appeals
## For the First Circuit

No. 09-1045

JOCELYN ROBERTS,

Plaintiff, Appellant,

v.

DELTA AIR LINES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

Charlotte E. Glinka with whom the Keches Law Group, P.C. was on brief for appellant.
Thomas R. Murphy with whom the Law Offices of Thomas R. Murphy, LLC was on brief for appellee.

March 24, 2010

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH**, **Chief Judge**.  Jocelyn Roberts, a flight attendant, was injured while working on a March 6, 2005, flight from Boston to Las Vegas for Song LLC, which was owned and operated by Delta Air Lines, Inc. ("Delta").  She received a lump sum workers' compensation payment from Song and Delta's insurer, which insured both Delta and Song under the same policy.  Nonetheless, Roberts sued Delta for negligence.  She said that her employer was Song, not Delta, and so she was free, under Massachusetts workers' compensation law, to sue Delta on a theory that Delta was a liable third party.  Delta removed the case to federal court based on diversity jurisdiction.

The district court, in a thoughtful opinion, disagreed with Roberts and entered summary judgment for Delta.  Roberts v. Delta Air Lines, Inc., No. 07-12154-DPW, slip op. at 35 (D.Mass. Dec. 4, 2008).  On appeal, Roberts argues the district court erred in granting summary judgment because there were contested issues of material fact.  We affirm.

I.

Delta registered Song as a Delaware limited liability company and wholly owned subsidiary of Delta in October 2002.  It created Song in response to a drop in air travel following the terrorist attacks of September 11, 2001.  Established airlines, like Delta, were losing price-sensitive leisure travelers, and Delta created Song to compete better with emerging "low-cost

carriers" for these customers.  The subsidiary, Song, lasted only until April 2007, when it was merged into Delta.[1]

The Federal Aviation Administration ("FAA") required the establishment of a specific operational relationship between Song and Delta as a matter of federal law.  Under FAA regulations, an entity must have an operating certificate in order to conduct commercial flight operations in the United States, or to advertise or otherwise offer such services.  14 C.F.R. § 119.5(b), (k).  Song did not have an operating certificate.  As a result, Delta was required to request from the FAA an amendment to its operations specifications to include the name Song in order to operate flights under the Song name.  See id. § 119.9(a).

The FAA granted Delta's request in March 2003, contingent on two requirements.  First, the FAA made clear that its approval of Delta's use of the Song brand name was "contingent upon [Delta] remaining in operational control of the Delta d/b/a Song flights," regardless of whether or not Song provided "certain services and/or personnel for the Delta d/b/a Song operations."  Further, Delta had to "refrain from marketing or advertising [Song] as a separate entity."  The FAA specifically stated that "[r]eferences to [Song] as a 'new airline', a 'new airline service', a 'new air carrier',

---

[1]     As the district court noted, Song went through a number of name changes, sometimes as a d/b/a of Delta.  Roberts does not claim that any of these name changes confused or misled her.

or a 'new carrier'" violated FAA rules. Delta complied with these conditions.

Song also complied with the regulatory restrictions on Delta's operating certificate and operations specifications. Its inaugural flight was on April 15, 2003. Although Song maintained its status as a wholly owned subsidiary, it functioned very much like a division of Delta. Song's president was also a vice president at Delta and Song's vice presidents for operations and safety, productivity and technology, and finance were also Delta employees; all four of them reported to Delta's chief operating officer. Song's human resources and communications managers were also Delta employees. Delta's profit and loss statements included Song's profit and loss statements. Song maintained its own website, but that website consistently reiterated that "Song is operated by Delta Airlines."

As required by the FAA, all Song flights were operated under Delta's operating certificate and commanded by Delta pilots. The aircraft themselves were all owned or leased by Delta and maintained by Delta employees. When communicating with air traffic controllers, pilots identified the Song flights as "Delta" flights.

All Song flight attendants, including Roberts, were also supervised by Delta personnel. Song flight attendants wore uniforms distinct from Delta uniforms, received training on marketing the Song brand, and were regularly assigned to work on

-4-

Song flights. Nonetheless, Delta set employment policies for Song flight attendants, provided their training, established their seniority list, and scheduled their flight assignments. Also consistent with the FAA's requirements, Song flight attendants, when making announcements on Song flights, were explicitly instructed to refer to Song as a brand or service of Delta and not as an independent carrier.

On February 25, 2003, Roberts, who had worked as a flight attendant for Delta since 1997, applied for a flight attendant position at Song. Her application contained language, identical to language in her Delta application that she filled out six years earlier, stating that Song operates under workers' compensation law. In signing the application, Roberts agreed to accept workers' compensation payment, in the event of an injury, and to "waive any and all other claims for damages or other relief on account of any injury, including all actions at law." Roberts's job interview was conducted by a Delta in-flight supervisor, and her eligibility for employment was confirmed by a Delta recruiter. When she was hired, Roberts received a new Song ID number and an employee badge, which on the reverse side read "Property of SONG (A Delta Airlines Company)." Although she formally became an employee of Song, Roberts retained the right to return to Delta in three years' time. Her pay came from the Song payroll system and her monthly earning statements contained only the name of Song.

Roberts's injuries occurred on March 6, 2005. That day, Roberts and three other Song flight attendants were working on Delta Flight 2054, originating from Boston's Logan International Airport and flying to Las Vegas. The flight was piloted and commanded by Delta employees.

As the flight was taxiing on the runway in Boston, the first officer sensed possible danger and called out for the captain to stop the aircraft. The aircraft came to a sudden stop. One of the flight attendants on the plane (not Roberts) complained that she had injured her elbow. The captain taxied the plane back to the gate, where the injured flight attendant was removed from the flight and replaced by a Delta flight attendant. At this time, Roberts, who had also been hurt, made a call to request that she be removed from the flight. According to Roberts, her call was "routed to a Delta person" who informed her that she "would not be taken off in Boston" and that she would have to remain on the aircraft as a crew member to Las Vegas.

During the flight, Roberts reported back pain; as a result, when the flight landed, paramedics met the plane. Roberts and another flight attendant were taken to a hospital in Las Vegas. On the aircraft's next flight, they were replaced by Delta flight attendants. Roberts had suffered several back injuries, including a herniated disc, which required multiple surgeries to repair.

Because of the injuries, she could no longer work as a flight attendant.

Immediately following the accident, Roberts began receiving workers' compensation payments. On May 9, 2008, Roberts signed an agreement under Massachusetts law, since Massachusetts was the place where the injury occurred, agreeing to accept a lump sum payment in lieu of future workers' compensation payments.[2] The agreement listed her employer as "Song Airlines/Delta (in dispute)." The payment was made by Ace American Insurance Company, Inc., which at that time administered a single policy, paid for by Delta, that included in its coverage Delta, Song, and other Delta divisions and affiliates.

Earlier, on October 5, 2005, Roberts had filed suit against Delta in Massachusetts state court, claiming that Delta was liable in tort for the captain's alleged negligence in bringing the aircraft to a sudden stop. The litigation was stayed for two years while Delta was in bankruptcy and that stay was lifted by stipulation of the parties in November 2007, after a bankruptcy court confirmed Delta's reorganization plan. Delta then filed a notice of removal in November 2007 to have the case heard in

---

[2] Since neither party has raised it on appeal, we bypass the question of whether the terms of the settlement agreement bar this action.

-7-

federal court.[3]  The district court granted summary judgment in Delta's favor on December 4, 2008.

## II.

We review the district court's grant of summary judgment de novo.  <u>Weaver's Cove Energy, LLC</u> v. <u>R.I. Coastal Res. Mgmt. Council</u>, 589 F.3d 458, 469 (1st Cir. 2009).  Summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Massachusetts workers' compensation law, like most such statutes, provides the exclusive remedy, in most circumstances, for claims by an injured employee against a covered employer.  Mass. Gen. Laws ch. 152, §§ 23-24.  Employees are "held to have waived [their] right of action at common law . . . in respect to an injury compensable under this chapter" unless they have given notice to their employer, at the time they were hired, claiming such a right.  Id. § 24.  Roberts gave no such notice.  Further, when an injured employee accepts compensation for the injury, both the employer and the workers' compensation insurers are released from all claims or demands at common law arising from the injury.  Id. § 23. Common law tort claims, including Roberts's negligence claim, are among

---

[3]    The timeliness of the removal in this case has not been challenged and we take no view on it.

those claims released by §§ 23 and 24.  See Saab v. Mass. CVS Pharm., LLC, 896 N.E.2d 615, 618-19 (Mass. 2008).

Massachusetts courts have adopted a two-part test for whether a person or entity is immune from liability under the statute.  To be immune, (1) a "direct employment relationship must exist" between the injured party and the person claiming immunity, and (2) "the employer must be an insured person liable for the payment of compensation."  Fleming v. Shaheen Bros., Inc., 881 N.E.2d 1143, 1146 (Mass. App. Ct. 2008) (quoting Numberg v. GTE Transp., Inc., 607 N.E.2d 1 (Mass. App. Ct. 1993)) (internal quotation marks omitted).

The key dispute here is whether there was an employment relationship between Roberts and Delta.  Roberts's underlying claim is that §§ 23 and 24 do not bar her from bringing suit against Delta, despite her having settled her workers' compensation case, because Delta was not her employer, Song was.  Injured people retain the right to pursue a claim against "any person other than the insured person employing such employee and liable for payment of the compensation" under the act.[4]  Mass. Gen. Laws ch. 152, § 15.

-----

[4]    It is undisputed that Roberts's injury is compensable under workers' compensation law because she suffered a personal injury that arose in the course of her employment, and thus any common law claims against her employer would be barred. Mass. Gen. Laws ch. 152, § 26; see also Saab, 896 N.E.2d at 619-20; Foley v. Polaroid Corp., 413 N.E.2d 711, 713-14 (Mass. 1980).

Massachusetts workers' compensation law gives a broad definition of who may be an employer (that is, the "insured person" employing such employees), but the statute does not set out conditions for determining when an employment relationship actually exists. Mass. Gen. Laws ch. 152, § 1(5).

Under Massachusetts case law, whether someone is a person's employer is largely determined by "who has direction and control of the employee and to whom . . . [the employee] owe[s] obedience in respect of the performance of his work." Fleming, 881 N.E.2d at 1147 (quoting Patterson v. Liberty Mut. Ins. Co., 723 N.E.2d 1005, 1010 n.13 (Mass. App. Ct. 2000)) (internal quotation marks omitted); see also Nat'l Ass'n of Gov't Employees v. Labor Relations Comm'n, 796 N.E.2d 856, 858-59 (Mass. App. Ct. 2003). This, as we note later, comes from the common law test.

Roberts's argument depends upon the assumption that Delta and Song were two separate entities and that Delta was not her employer. She argues that Song was her general employer, and she is entitled to a presumption that she remained in the employ of her "general" employer, and not of Delta. See Kelley v. Rossi, 481 N.E.2d 1340, 1343 n.5 (Mass. 1985). Roberts asserts that whether she was under Delta's "direction and control" so as to create an

employment relationship is a question of fact that should have been decided at trial.[5]

We disagree and conclude that Delta was Roberts's employer (or, at least, Roberts's co-employer) because, at all pertinent times, Roberts was under the direction and control of Delta and she reasonably had obligations to Delta in the performance of her duties. Such direction and control was in fact required by federal law. The FAA clearly stated that Delta's permission to operate flights under the Song brand name was conditioned on Delta remaining "the person/entity exercising operational control over the Delta d/b/a Song flights." Additionally, FAA regulations make clear that, at the time of the accident, the pilot, a Delta employee, was "in command of the aircraft and crew" and had "full control and authority in the operation of the aircraft, without limitation, over other crewmembers and their duties." 14 C.F.R. § 121.533(d)-(e). FAA regulations also gave Delta ultimate direction and control over

---

[5] Roberts also argues that Delta cannot satisfy the second prong of the test for immunity. She asserts that at most Delta was her "special employer" and that there is a dispute of fact as to whether Delta was an "insured person liable for payment of compensation" to Roberts such that it was entitled to immunity. Fleming, 881 N.E.2d at 1146; see also Mass. Gen. Laws ch. 152, § 18. Because Roberts did not raise this argument before the district court, it is waived. Even so, the argument understates plaintiff's relationship with Delta. Delta, as a co-insured with Song on the workers compensation policy, was liable for the payment. Cf. Fleming, 881 N.E.2d at 1148. In this case, the fact that Song was named on the policy does not demand a different conclusion.

Roberts's presence on the flight, requiring that Delta, as the holder of the operating certificate, be the entity that assigned Roberts and other flight attendants to their duties on Song flights. See 14 C.F.R. § 121.467.

Massachusetts uses the common law criteria for "employer" and "employee" in its workers' compensation law. See Ramsey's (Dependent's) Case, 360 N.E.2d 911, 913-14 (Mass. 1977). The undisputed facts also show that in practice Delta exercised direction and control over Roberts, and Delta therefore was her employer under the common law test. Fleming, 881 N.E.2d at 1147; see also Lopez v. Massachusetts, 588 F.3d 69, 84 (1st Cir. 2009) ("At common law the relevant factors defining the master-servant relationship focus on the master's control over the servant.") (quoting Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003)). It is undisputed that Delta employees interviewed and hired Roberts for her position at Song; that Delta was ultimately responsible for the employment policies Roberts worked under, as well as her training and work assignments; that Delta regulated the manner and extent to which Roberts could make representations about Song; and that the aircraft Roberts worked on, including on the day of her injury, were piloted, owned or leased, and serviced by Delta and its employees. When, after the accident, Roberts requested to be removed from the flight, it was a Delta employee who instructed her to remain. There were also no

acts of negligence by Delta independent of Song; the injury occurred during a regular Song flight, which Delta pilots always commanded.

Roberts's arguments based on other facts do not create a material dispute of facts. The fact that Roberts signed an employment contract with Song and was paid by Song does not create a material dispute about who directed and controlled her activities or whose instructions governed her conduct. Nor does the fact that Song was separately incorporated change the calculus. The FAA made clear that even if Song, as Delta's subsidiary, provided personnel and services to Song flights, Delta nonetheless was required to retain operational control, and the undisputed facts show Delta did so in practice.

Because Delta's direction and control was so clear, we need not explore the intricacies of the corporate relationship between Delta and Song, including whether the piercing the corporate veil doctrine might play a role on other facts. We also do not address whether Roberts was a "lent servant."[6] This also is

---

[6] The "lent servant" doctrine provides,

When a [sic] employer lends an employee to another party, that party becomes liable for worker's compensation only if
   (a) the employee has made a contract of hire, express or implied, with the second employer;
   (b) the work being done is essentially that of the second employer; and
   (c) the second employer has the right to control the details of the work.

simply not a situation of one company leasing or lending employees from another.  <u>See</u> Mass. Gen. Laws ch. 152, § 14A.

Understandably, the plaintiff tried to fit the facts of this case to the formal labels created by the state statute, such as "general" and "special" employers, as well as "leased" or "lent" employees.  The indiscriminate use of labels can undercut the basic concepts of direction and control which underlie the question of whether an entity is an employer.  Delta, the employer in fact, has, through its insurance, paid workers' compensation to plaintiff.  This is not a situation which would justify allowing a tort suit to go forward.

We <u>affirm</u> entry of judgment for Delta.

---

3 Arthur Larson & Lex K. Larson, <u>Larson's Workers' Compensation Law</u> § 67.01[1], at 67-2 (2009).