Ricciardone, David, J.
INTRODUCTION
The plaintiff, Ana Gamarra, brings this negligence action against First Plastics Corp. (“First Plastics”), alleging that she suffered serious injury to her right thumb while working on a riveting machine on First Plastics’ premises. Specifically, she alleges that First Plastics breached its duty to provide a reasonably safe work environment and reasonably safe tools and equipment. The matter is before the court on First Plastics’ motion for summary judgment pursuant to Mass.R.Civ.P. 56(c), on the grounds that the action is barred by the exclusivity provisions of Massachusetts’ Workers’ Compensation Act, G.L.c. 152 (“the WCA”). For the following reasons, the motion is DENIED.
BACKGROUND
The following facts are taken from the summary judgment record and are viewed in the light most favorable to the plaintiff, as the nonmoving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
First Plastics is a Massachusetts corporation in the business of molding and assembling various items, including snow shovels.
On September 12, 2006, the plaintiff injured her thumb while working on a riveting machine at First Plastics’ facility in Leominster. She had been working *5 at First Plastics for three and a half to four years before the accident. She originally got the job through an agency that provides temporary workers to various businesses. Approximately one year before the accident, she was working at First Plastics through Peak Staffing, Inc. (“Peak Staffing”), another agency that provides temporary workers. Peak Staffing provided First Plastics with temporary workers, including the plaintiff, pursuant to an oral agreement setting Peak Staffing’s charge for each worker at a certain percentage above the pay wage. Peak Staffing used newspaper advertisements to recruit individuals to work at First Plastics and other client companies, and a Peak Staffing employee was responsible for hiring applicants.
Peak Staffing paid the plaintiff, but First Plastics trained and supervised her. First Plastics was also responsible for assigning specific duties to the plaintiff while she worked there. Although Peak Staffing was not involved in any way with the plaintiffs training, supervision, or assignment of particular duties, it retained the right to terminate or transfer her at any time without First Plastics’ assent.
Peak Staffing obtained workers’ compensation insurance in its own name through American International Group. Peak Staffing included the insurance premiums in its charges to First Plastics for the temporary workers it provided, but the bills were not itemized and the amount allocable to the premiums was not disclosed. Meanwhile, First Plastics had its own workers’ compensation insurance policy for its direct employees. The parties agree that the plaintiff was not entitled to recover under First Plastics’ policy.[1]
After the accident, the plaintiff did not return to work. At some point, Peak Staffing called her and asked her to return. When she did not, Peak Staffing terminated her by removing her from the payroll. The plaintiff.applied for and obtained workers’ compensation benefits under Peak Staffing’s policy.
On July 22, 2009, the plaintiff brought this action against First Plastics, alleging that the company failed to provide a reasonably safe work environment and reasonably safe tools and equipment. First Plastics now moves for summary judgment, arguing that the WCA provides the sole remedy for the plaintiffs claims.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Bailey, 386 Mass. at 370-71.
II. Analysis
The WCA provides the exclusive remedy for common-law claims that are compensable under the statute as “personal injur[ies] arising out of and in the course of. . . employment.” G.L.c. 152, §24; Foley v. Polaroid Corp., 381 Mass. 545, 548-50 (1980) (Foley 1), quoting G.L.c. 152, §26. A plaintiff s common-law claims against an employer will be barred where: “the plaintiff is shown to be an employee; [her] condition is shown to be a ‘personal injury’ within the meaning of the compensation act; and the injury is shown to have arisen ‘out of and in the course of. . . employment.’ ” Foley I, 381 Mass. at 548-49, quoting G.L.c. 152, §26. Injured persons retain the right to pursue claims against “any person other than the insured person employing such employee and liable for payment of the compensation” under the WCA. G.L.c. 152, §15.
Based on the summary judgment record, it is not clear whether the agreement between Peak Staffing and First Plastics qualifies as an “employee leasing arrangement." 211 Code Mass. Regs. §111.03. See also G.L.c. 152, §14A (governing employee leasing companies).[2]
As Justice Raymond Brassard pointed out in a 1999 decision, “(authority regarding employee leasing companies is limited ...,” and “(c]ases involving employee leasing agreements have largely been addressed under G.L.c. 152, §18, entitled ‘Independent and sub-contractors; liability of insurer and others.’ ” Margolis v. Charles Precourt & Sons, 10 Mass. L. Rptr. 43, 1999 WL 317437, at *2-*3 (Mass.Super. 1999) (Brassard, J.). Twelve years later, there is still little authority on §14A, so the court must again look to cases interpreting §18 for guidance.
General Laws c. 152, §18, provides in relevant part:
In any case where there shall exist with respect to an employee a general employer and a special employer relationship, as between the general employer and the special employer, the liability for the payment of compensation for the injury shall be *6 borne by the general employer or its insurer, and the special employer or its insurer shall be liable for such payment if the parties have so agreed or if the general employer shall not be an insured or insured person under this chapter.
First Plastics contends that it is immune from liability for the plaintiffs common-law tort claims because it was the plaintiffs “general employer" at the time of her work-related accident and it was responsible for paying insurance premiums to cover the plaintiffs workers’ compensation benefits. In opposition, the plaintiff argues that the WCA bars an action only against Peak Staffing, as her true “general employer," and that First Plastics, which merely borrowed the plaintiff as a “special employee,” is therefore not immune from liability under the WCA. See G.L.c. 152, §18.
Although the parties dispute the significance of Peak Staffing’s right to terminate the plaintiff without First Plastics’ approval, the facts underlying the nature of the parties’ relationships are not in dispute.[3] “Where the underlying facts are not disputed, whether an entity is an employer is a matter of law for the court.” Fleming v. Shaheen Bros., Inc., 71 Mass.App.Ct. 223, 228 (2008).
A two-part test determines whether an employer is immune from liability under the WCA. Id. at 226-27 (citations omitted). First, “a direct employment relationship must exist, and [second,] the employer must be an insured person liable for the payment of compensation” (internal quotations omitted). Id. at 227, quoting Numberg v. GTE Transp., Inc., 34 Mass.App.Ct. 904, 904 (1993).
Relying exclusively on Fleming, First Plastics argues that it, not Peak Staffing, was the plaintiffs direct employer. See id. at 227 (direct employment relationship existed between plaintiff and defendant company, where defendant had exclusive right to control plaintiffs work).
In Fleming, a company that provided payroll and other administrative services to the defendant paid workers’ compensation insurance premiums to cover the plaintiff, but the plaintiff was also covered under the defendant’s own workers’ compensation policy. 71 Mass.App.Ct. at 226. After a work-related accident, the plaintiff obtained benefits from the payroll company’s insurer. Id. He then sued the defendant for his injuries, asserting that the WCA did not shield the defendant from liability. Id. at 224.
The Appeals Court held that there was a direct employment relationship between the plaintiff and the defendant company, observing that the defendant “independently interviewed and hired [the plaintiff], exclusively controlled [the plaintiffs] training, hours and job duties, supervised [the plaintiffs] work and indirectly paid his wages and workers’ compensation benefits.” Id. at 227. “[The payroll company], on the other hand, formally paid [the plaintiffs] wages and workers’ compensation benefits, but had no actual control over hiring, firing, or other work conditions.” Id. The Court noted that there was nothing in the summary judgment record to raise an issue of fact with respect to the payroll company’s ability to hire and fire the plaintiff. Id. at 227 n.4.
Here, by contrast, the plaintiff cites the deposition testimony of First Plastics’ president and Peak Staffing’s president (who happen to be husband and wife), as evidence of Peak Staffing’s retained ability to terminate the plaintiff, which bears heavily on whether Peak Staffing had a right of control over her. See Fleming, 71 Mass.App.Ct. at 227 n.4. Additionally, in this case, Peak Staffing, not First Plastics, independently interviewed and hired the plaintiff. Contrast id. at 226-27.
Whereas in Fleming it was clear that the defendant company retained the payroll company only to handle its payroll and other administrative matters, here the undisputed facts indicate that Peak Staffing reserved for itself a more active role in the hiring, placement, and termination of its temporary workers. Contrast id. at 229 (“Fleming had no contact with NBS, was never introduced to anyone from NBS, had never been to any NBS location, and only discovered its name when he received his first paycheck”).
It does not follow from the Appeals Court’s treatment of the payroll company in Fleming that Peak Staffing cannot be considered a “general employer” for purposes of the WCA, contrast id. at 228-29, and there is no evidence that First Plastics and Peak Staffing had an agreement that First Plastics would bear liability for paying workers’ compensation benefits to its tem-poraiy workers. See G.L.c. 152, §18. In fact, First Plastics’ president testified that his understanding was that the plaintiff was not entitled to recover under First Plastics’ own workers’ compensation insurance policy.
This case is more like Lang v. Lamothe Co., 20 Mass.App.Ct. 231 (1985). There, the plaintiff was employed by a company that supplied temporary labor to various business establishments, one of which was the defendant, who assumed responsibility for supervising the plaintiff. Id. at 231. The plaintiff was injured while working on the defendant’s premises. Id. Both the leasing company and the defendant company carried workers’ compensation insurance; however, the leasing company’s insurer paid the plaintiffs workers’ compensation benefits, and there had been no agreement between the two companies regarding who would bear responsibility for insuring the leased workers. Id. at 231-32. Acknowledging the parties’ stipulation that the leasing company was the plaintiffs “general employer” and the defendant company was his “special employer” for purposes of G.L.c. 152, §18, the Appeals Court held that, “as a special employer [the defendant] is not liable to pay compensation,” and that “the defendant was not immune from suit under c. 152 *7 because it was not liable to pay compensation to the plaintiff.” Id. at 232 (alterations the Court’s).
In its brief, First Plastics glosses over the second prong of the test for employer immunity under the WCA — that the employer must be liable for payment of the employee’s workers’ compensation. Compare Fleming, 71 Mass.App.Ct. at 229 (payroll company’s formal payment of premiums was not dispositive, as defendant remained an “insured person liable for payment of compensation” under the statute), with Numberg, 34 Mass.App.Ct. at 905 (where defendant company agreed to pay leasing company specified amount attributable to cost of providing workers’ compensation benefits for leased drivers, but did not agree to pay compensation benefits, “[t]he effect of the financial terms of the agreement . . . was not to shift responsibility for payment of workers’ compensation benefits to [the defendant], but to assure [the leasing company] a profit after paying all of the various costs of supplying [the defendant] with drivers”).
Here, it is undisputed that First Plastics was not liable for payment of the plaintiffs workers’ compensation benefits. Its payments to Peak Staffing, which included unallocated amounts attributable to Peak Staffing’s workers’ compensation insurance costs, merely assured Peak Staffing a profit after the various costs of supplying First Plastics with workers. See Numberg, 34 Mass.App.Ct. at 905.
Because the plaintiff was covered only by Peak Staffing’s workers’ compensation policy and there was no agreement between Peak Staffing and First Plastics that the latter would be liable for the payment of compensation as a special employer, Peak Staffing is entitled to the benefits and burdens of the WCA, while First Plastics is not. See G.L.c. 152, §§15, 18. Accordingly, First Plastics’ motion for summary judgment shall be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment be DENIED.

The parties did not include their respective workers’ compensation policies in the summary judgment record.

General Laws c. 152, §14A, governs “employee leasing companies” and vests authority in the commissioner of insurance to regulate the circumstances and conditions under which an employee leasing company may provide workers’ compensation coverage to employees that it leases to client companies.
An “employee leasing company” is “a sole proprtetorship, partnership, corporation or other form of business entity whose business consists largely of providing workers to one or more client companies by means of employee leasing arrangements.” 211 Code Mass. Regs. §111.03. “Employee leasing arrangement means an arrangement whereby one business entity provides workers to another business entity under a contract that retains for the lessor a substantial portion of personnel management functions, such as payroll, direction and control of workers, and the right to hire and fire those workers provided by such lessor; provided, however, that the leasing arrangement is long term and not an arrangement to provide the lessee temporary help services during seasonal or unusual conditions such as temporary skill shortages or temporary special assignments and projects.” Id. The regulations also require that the employee leasing company maintain a workers’ compensation and employers’ liability insurance policy for each client company. 211 Code Mass. Regs. §111.04.

 Peak Staffing’s president testified in her deposition that Peak Staffing had authority to terminate employees on its payroll without First Plastics’ approval, even though it had never exercised such authority. Ex. 17, Barbara Mazzaferro Depo., pp. 75-76. Her testimony flatly contradicts a pre-de-position affidavit that she signed in support of First Plastics’ summary judgment motion, in which she stated that “Peak Staffing, Inc. does not have the authority to fire any temporary employee working for First Plastics Corp. . . .” Ex. 7, Barbara Mazzaferro Aff. at par. 9. However, in view of First Plastics’ Rule 9A(b)(5) concession that “Peak Staffing would have the right to terminate any of its employees at any time for any reason,” the court concludes that there is no genuine dispute on this point.