NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-676                                          Appeals Court

        ANTONIO PEREZ MOLINA  vs.  STATE GARDEN, INC.

                        No. 14-P-676.

    Suffolk.    December 10, 2014. - September 3, 2015.

        Present:  Katzmann, Hanlon, & Maldonado, JJ.


Practice, Civil, Summary judgment.  Workers' Compensation Act,
    Action against third person, Identity of employer,
    Exclusivity provision.  Waiver.  Insurance, Waiver.
    Release.



    Civil action commenced in the Superior Court Department on
October 17, 2011.

    The case was heard by Robert B. Gordon, J., on a motion for
summary judgment.


    Mark S. Horrigan for the plaintiff.
    Martha J. Zackin for the defendant.
    John Pagliaro & Martin J. Newhouse, for New England Legal
Foundation & another, amici curiae, submitted a brief.


    KATZMANN, J.  This appeal presents the question whether

the "alternate employer endorsement" to a staffing company's

workers' compensation insurance policy satisfies the

requirements of G. L. c. 152, §§ 15 and 18, such that an injured

employee's employer, a customer of the staffing company and named in the endorsement, is immune from tort liability under the Workers' Compensation Act (Act). We answer that question in the affirmative.

The plaintiff, Antonio Perez Molina (Molina or employee), was injured while providing services on assignment from American Resource Staffing Network, Inc. (ARS), to State Garden, Inc. (State Garden or defendant), and brought suit against State Garden for negligence. While his case was pending in the trial court, he was awarded workers' compensation benefits on ARS's policy, which named the defendant as an additional insured. A Superior Court judge allowed State Garden's motion for summary judgment and dismissed Molina's complaint on the ground that his claim was barred by the exclusivity provisions of the Act, G. L. c. 152, §§ 23-24.[1] Molina appeals. We affirm.[2]

---

[1] General Laws c. 152, § 23, as appearing in St. 1985, c. 572, § 34, provides:

"If an employee files any claim or accepts payment of compensation on account of personal injury under this chapter, or submits to a proceeding before the department under sections ten to twelve, inclusive, such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury. If an employee accepts payment of compensation under this chapter on account of personal injury or makes an agreement under section forty-eight, such action shall constitute a release to the insured of all claims or demands at common law, if any, arising from the injury."

Background. ARS is a staffing company that provides temporary staffing to clients such as State Garden, a produce business. State Garden uses ARS employees to supplement its workforce. Molina was assigned to State Garden as a temporary worker at its processing facility in Chelsea, Massachusetts. On or about December 22, 2010, Molina sustained a low back injury in the course of his work for State Garden.[3] Molina's injury was covered by the Act. He applied for and received benefits from A.I.M. Mutual Insurance Company, ARS's workers' compensation insurer. State Garden and ARS both acted as Molina's employer,

---

General Laws c. 152, § 24, as amended through St. 1986, c. 662, § 18, provides in relevant part:

> "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self-insurer, if the employee shall not have given the said notice within thirty days of the time said employer became an insured person or self-insurer."

[2] We acknowledge the amicus brief submitted by the New England Legal Foundation and Associated Industries of Massachusetts.

[3] The complaint alleges, "On or about December 22, 2010 the defendant, by its agents, servants or employees created an unreasonably hazardous work environment for the plaintiff that required the plaintiff to repeatedly lift heavy rolls of wrapping material either above his head or above shoulder level and load it onto a wrapping or food processing machine."

controlling different aspects of his employment. ARS was the "general employer," to whom Molina applied for work. It retained control over several personnel and administrative functions, including purchasing and paying for insurance. Compare Galloway's Case, 354 Mass. 427, 429-430 (1968); Ramsey's Case, 5 Mass. App. Ct. 199, 201-202 (1977). However, ARS was not Molina's "direct employer"; it could not arbitrarily terminate, transfer, or remove Molina on a unilateral basis. See Fleming v. Shaheen Bros., 71 Mass. App. Ct. 223, 227 (2008) (Fleming). State Garden was both the "special employer" and the "direct employer": it set Molina's hours, established his duties and responsibilities, directed him to perform certain tasks, and managed his day-to-day performance. See Galloway's Case, supra; Ramsey's Case, supra; Fleming, supra.[4] State Garden was liable for the payment of Molina's wages by virtue of its arrangement with ARS, whereby it paid ARS an amount equivalent to his wages plus a service fee.

---

[4] General and special employment have been acknowledged since very early in the Act's history, appearing in "Scribner's Case, 231 Mass. 132, 135 (1918), in which the court adhered to the common-law criteria of control and assent by the employee in imposing liability as between 'a special employer as distinguished from his [. . . "lent" employee's] general employer.'" Ramsey's Case, 5 Mass. App. Ct. at 203. On general and special employers, see 3 Larson, Workers' Compensation Law § 67 (2014).

ARS has a workers' compensation policy, which includes an "alternate employer endorsement."  The endorsement states:

> "This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer . . . named in Item 2 of the Schedule.  Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured."[5]

The alternate employer endorsement specifically names State Garden.  State Garden is also identified as an "additional employer" under the "Certificate of Liability Insurance."  An affidavit by Michele Bordieri, State Garden's human resources manager, as well as the "Workers Compensation and Employers Liability Insurance Certificate," indicate that State Garden carries workers' compensation insurance that covers its employees, and for which it pays as the named insured.[6]

In addition, during ARS's hiring process, Molina signed a "Waiver and Release," which states as follows:

---

[5] The alternate employer endorsement has been approved in Massachusetts by the Division of Insurance.  See Workers' Compensation Rating and Inspection Bureau of Massachusetts, Filed and Approved Endorsements, Alternate Employer Endorsement WC 00 03 01 A, https://www.wcribma.org/Mass/ToolsandServices/UnderwritingToolsandForms/FiledandApprovedEndorsements.aspx [http://perma.cc/3E6W-8AUF].

[6] Although State Garden states in its brief that its workers' compensation policy covers only employees for whom it is the "sole employer," the Bordieri affidavit did not so specify.

"In consideration of any offer of employment by American Resource Staffing, I hereby acknowledge, understand and agree that the following will constitute terms and conditions of any such employment.

"In recognition that any work related injuries which might be sustained by me are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the customers or clients of American Resource Staffing, based on the same injury or injuries, and to the extent permitted by law, I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make claims or bring suit against any client or customer of American Resource Staffing, for damages based upon injuries which are covered under such Workers' Compensation statutes."

Molina sued State Garden for his injuries notwithstanding his receipt of workers' compensation benefits on ARS's insurance policy, the alternate employer endorsement, State Garden's designation as an additional insured employer, and the waiver and release of liability.  State Garden filed a motion to dismiss and, in the alternative, a motion for summary judgment. In opposing Molina's suit, State Garden contended that, where the general employer, ARS, carried a workers' compensation policy containing an alternate employer endorsement naming State Garden as an additional insured employer, State Garden was entitled to immunity from suit under the exclusivity provisions of the Act.  Molina countered that §§ 15 and 18 of the Act limit immunity for special employers such as State Garden to circumstances where, among other things, the special employer actually pays the workers' compensation benefit, and that the

alternate employer endorsement did not satisfy this requirement. The judge allowed the motion for summary judgment on the ground that the alternate employer endorsement shielded State Garden from common-law liability under the exclusivity provisions of the Act. We agree.[7] We also conclude that Molina's action is barred by the waiver and release he signed.

Discussion. On appeal, we review the motion judge's grant of summary judgment de novo. Twomey v. Middleborough, 468 Mass. 260, 267 (2014). Fraco Prods., Ltd. v. Bostonian Masonry Corp., 84 Mass. App. Ct. 296, 299 (2013). "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), citing Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). We may affirm the entry of summary judgment on any ground supported by the record. See American Intl. Ins. Co. v. Robert Seuffer GmbH & Co., 468 Mass. 109, 113 (2014).

---

[7] The motion judge stated that it was undisputed that ARS, as the "direct employer," was immune from suit. However, State Garden argued on its motion for summary judgment that it (State Garden) was the direct employer. We agree. See discussion, passim; Fleming, 71 Mass. App. Ct. at 227. In any event, because Molina only brought suit against State Garden, we are not presented with the question whether ARS would be immune from suit and express no opinion regarding that question.

1.  Alternate employer endorsement as source of immunity. The issue before us is whether the alternate employer endorsement written into ARS's workers' compensation insurance policy immunizes State Garden from common-law liability under the exclusivity provisions of the Act.

We begin by observing, as did the motion judge, that there is no Massachusetts case squarely on point.  In Lang v. Edward J. Lamothe Co., 20 Mass. App. Ct. 231, 232-233 (1985) (Lang), and Numberg v. GTE Transport, Inc., 34 Mass. App. Ct. 904, 905 (1993) (Numberg), this court acknowledged that, pursuant to §§ 15 and 18 of the Act, a special employer who was also the direct employer could be immune from suit if it had made an agreement with the general employer to pay the workers' compensation benefits for the injured employee.  No such agreement had been made in either case, and, thus, the special employers were not immune from common-law tort liability. Because there was no alternate employer endorsement in either case, we had no occasion to examine the effect of such an endorsement on a special employer's tort immunity.  A third case, Fleming, 71 Mass. App. Ct. at 228-229, is not directly applicable because there was no general- or special-employer relationship in that case.  Thus, these cases do not resolve the issue before us.  To resolve that issue, we look primarily to the Act.

a.  Statutory scheme.  The Act was enacted as a humanitarian measure in July, 1911, see St. 1911, c. 751, in response to public sentiment that previous remedies under common law and the employers' liability act did not sufficiently protect against injuries or provide relief for workplace accidents.  See Meley's Case, 219 Mass. 136, 139 (1914); Cox's Case, 225 Mass. 220, 223-224 (1916); LaClair v. Silberline Mfg. Co., 379 Mass. 21, 27 (1979).  The goal of the workers' compensation scheme is the protection of the injured worker from the sudden loss of cash income.  See Sellers's Case, 452 Mass. 804, 810-811 (2008).

The Act provides the exclusive remedy for claims brought by an injured employee against an employer.  See G. L. c. 152, §§ 23-24; Green v. Wyman-Gordon Co., 422 Mass. 551, 558 n.10 (1996) (reciting the relevant part of § 24:  "[a]n employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under this chapter, to recover damages for personal injuries . . .").  "[U]nder G. L. c. 152, § 24, unless an employee expressly preserves his or her common law rights of action, a claim alleging negligence of an employer . . . is foreclosed by the exclusivity provisions of the workers' compensation act."  Perkins v. Commonwealth, 52 Mass. App. Ct. 175, 176-177 (2001).  "The [A]ct was designed to replace tort actions, by providing a

uniform, statutory remedy for injured workers, in contrast to a piecemeal, tort-based system."  Saab v. Massachusetts CVS Pharmacy, LLC, 452 Mass. 564, 566-567 (2008) (quotations and citations omitted).  The exclusivity provisions are the "cornerstone" of the Act.  Id. at 568.  Employees get a "guaranteed right of recovery," but they are in turn barred from "recovering against their employers for injuries received on the job."  Barrett v. Rodgers, 408 Mass. 614, 616 (1990).  Workers' compensation laws represent "the Legislature's balance of competing societal interests."  Squillante's Case, 389 Mass. 396, 398 (1983) (quotation omitted).  See generally Restatement of Employment Law c. 4 (2015).

Section 15 of the Act leaves open the possibility that, notwithstanding receipt of workers' compensation benefits from the employer, an injured employee may bring tort actions against other entities.[8]  To be eligible for the limited immunity from suit provided by the Act, a defendant must satisfy a two-part

---

[8] General Laws c. 152, § 15, as appearing in St. 1991, c. 398, § 39, provides, in pertinent part:

"Nothing in this section, or in section eighteen or twenty-four shall be construed to bar an action at law for damages for personal injuries or wrongful death by an employee against any person other than the insured person employing such employee and liable for payment of the compensation provided by this chapter for the employee's personal injury or wrongful death and said insured person's employees."

test.  See Lang, 20 Mass. App. Ct. at 232 ("[1] the employer must be an insured person liable for the payment of [workers'] compensation [benefits to the injured employee], and [2] the employer must be the direct employer of the employee").

In part two of the test, the employer asserting an immunity defense must establish that it is also the "direct" employer. See, e.g., Fleming, 71 Mass. App. Ct. at 227 ("[I]n order to determine whether an employer-employee relationship exists, the finder of fact must identify who has direction and control of the employee and to whom does he owe obedience in respect of the performance of his work.  Method of payment for work, though important, is not controlling in determining the terms of an employment relationship.  The primary test is whether one has a right to control the individual's work performance") (quotations and citations omitted).

In part one of the test, as to whether the employer is insured and liable for the workers' compensation benefits owed the employee, in cases such as the instant matter, where there is both a general and a special employer, § 18 of the Act comes into play.  The last paragraph of § 18, inserted by St. 1969, c. 755, § 2, provides:

> "In any case where there shall exist with respect to an employee a general employer and a special employer relationship, as between the general employer and the special employer, the liability for the payment of compensation for the injury shall be borne by the general

> employer or its insurer, and the special employer or its insurer shall be liable for such payment if the parties have so agreed or if the general employer shall not be an insured or insured person under this chapter."

Thus, if a special employer is also the injured employee's direct employer (thus satisfying part two of the test), and the general and special employer have agreed that the latter shall be liable for carrying workers' compensation insurance and paying workers' compensation benefits, the special employer may be immune from tort liability. Otherwise, § 18 creates the presumption that the general employer will be liable for benefits, and the special employer will thus fail part one of the Lang test and will not enjoy immunity from tort liability. See Lang, 20 Mass. App. Ct. at 232-233; Numberg, 34 Mass. App. Ct. at 904-905.

b. The alternative employer endorsement. Here, as we have noted, the defendant satisfies the requirements of being the direct employer. It thus meets part two of the Lang immunity test. Because ARS and the defendant, respectively, are the general and special employer of the plaintiff, § 18 of the Act applies in determining whether the defendant meets part one of the Lang immunity test. The question before us is whether the alternate employer endorsement constitutes the agreement contemplated by § 18, that "the special employer or its insurer shall be liable for such [workers' compensation] payment," such

that under Lang, 20 Mass. App. Ct. at 232, the defendant is "an insured person liable for the payment of [workers'] compensation [benefits to the injured employee]." We conclude that the alternate employer endorsement is such an agreement.

The clear purpose of the endorsement's provision that "Part One (Workers Compensation Insurance) . . . will apply as though the alternate employer [State Garden] is insured," is to provide coverage to State Garden. The endorsement makes State Garden an insured employer[9] with respect to workers' compensation claims brought against it for workplace injuries, and thus satisfies the requirements of § 18 of the Act.

Although Molina argues that allowing the Act to bar his complaint for damages would circumvent the explicit provisions of G. L. c. 152, § 15 (see note 8, supra), State Garden's designation as an additional insured legitimately protects it against Molina's claims. As to the effect of naming a party as

_____

[9] This view of the alternate employer endorsement, a standard endorsement used in other States, has been articulated in at least one reported Federal Court of Appeals decision. See Cal-Dive Intl., Inc. v. Seabright Ins. Co., 627 F.3d 110, 114 (5th Cir. 2010) ("when endorsements such as the Alternate Employer Endorsement add additional insureds to the policy, these additional insureds enjoy the same benefits and are subject to the same restrictions as a named insured absent policy language to the contrary. . . . It is significant that the Alternate Employer Endorsement provides that 'this endorsement will apply as though the alternate employer is an insured'").

an additional insured, see, e.g., <u>Massachusetts Turnpike Authy</u>.
v. <u>Perini Corp</u>., 349 Mass. 448, 457 (1965) ("The naming of
additional insureds does not extend the nature of the
substantive coverage originally given by the policy but merely
gives to other persons the same protection afforded to the
principal insured).  See generally Mootz, 3 New Appleman on
Insurance Law Library Edition § 16.05[1][c][i], at 16-144
(2013).

In sum, in contracting to have State Garden sheltered under
ARS's workers' compensation policy, the alternate employer
endorsement naming State Garden as an additional insured is
precisely the kind of agreement between general and special
employer envisioned in § 18 of the Act, and, thus, renders State
Garden immune from suit.  Contrast <u>Lang</u>, 20 Mass. App. Ct. at
232-233; <u>Numberg</u>, 34 Mass. App. Ct. at 904-905.  Moreover, our
conclusion as to the alternate employer endorsement is
consistent with the statutory goal of protecting an employee who
is injured on the job, within the framework of replacing a
piecemeal tort system with a uniform statutory remedy.

2.  <u>Validity of waiver and release</u>.  Molina argues that the
waiver and release he signed at the beginning of his employment
-- contracting not to sue for damages based upon injuries
covered by the Act -- is invalid because it was signed before
any employment relationship existed and therefore was only a

covenant not to sue. We disagree. The release in <u>Horner</u> v. <u>Boston Edison Co</u>., 45 Mass. App. Ct. 139, 141 n.3 (1998), nearly identical to the release here, was deemed enforceable. In <u>Horner</u>, as here, the release was provided by a staffing company employing the plaintiff. The release waived the plaintiff's right to bring suit against any client of the staffing company for injuries covered under State workers' compensation statutes, and was signed by the plaintiff as part of his employment application with the staffing company, prior to any employment relationship existing between the parties and prior to any cause of action arising. This court ruled that the release was valid and barred suit against the defendant, a client of the staffing company. <u>Id</u>. at 142-145. The <u>Horner</u> court noted that the agreement "extinguishes only the employee's right to recover <u>additional</u> amounts as a result of a work-related injury for which the employee has already received workers' compensation benefits," <u>id</u>. at 142 (emphasis added), that the agreement "does not require Horner to strip himself of compensation benefits for his injury, and [that] allocation of risk by means of a release is generally not against public policy." <u>Ibid</u>. "Viewed as a whole, the release is not extracted by the employer as a shield against its own liability but rather as protection for its customers for those risks assumed by its employees who, in turn, are covered by workers' compensation insurance." <u>Ibid</u>. We see

no reason to depart from the reasoning of the <u>Horner</u> court. Therefore, in addition to having immunity under the Act, State Garden is protected by the waiver and release Molina signed.

<u>Judgment affirmed</u>.